366 P.2d 67

Arthur P. DANSAK and Robert S. Lyon, Plaintiffs and Respondents,

v.

Louis C. DELUKE, Defendant and Appellant.

No. 9355.

Supreme Court of Utah.

Nov. 6, 1961.

---

Robert L. Schmid, Gardner & Burns, Salt Lake City, for appellant.

Grant Macfarlane, Jr., Salt Lake City, for respondents.

CALLISTER, Justice.

Plaintiffs commenced this action to collect the amounts due on several of defendant's promissory notes. Defendant concedes that nothing in the way of either principal or interest has been paid on the notes, but contends that the notes had been fully discharged and satisfied by a consummated agreement between his niece, Lucy Deluke, and certain of his creditors, among whom were the plaintiffs. The lower court, sitting without a jury, found the issues in favor of the plaintiffs, and defendant appeals.

The facts giving rise to the asserted discharge are involved, confusing and, for the

most part, in sharp dispute. However, it appears from the record that the defendant borrowed moneys from several persons, including plaintiffs, in the Phoenix, Arizona, area. These obligations were evidenced by the defendant's promissory notes. Some time in December of 1956, Edwin F. Jones, the then husband of Lucy Deluke, had some conversations with some of defendant's Phoenix creditors, principally a Dr. Rogers. It should be noted that Mr. Jones was also a creditor of the defendant. As a result of these conversations a plan was devised to form a corporation into which would be transferred a mining lease, known as the Carisa Mining lease. The incorporators were to be Lucy, her husband, Dr. Rogers, Paul Wermerskerchen, Dr. William A. McGarey, Dr. Frank Cocuzzi, Robert S. Lyon (plaintiff) and Arthur P. Dansak (plaintiff). All of the people in this group, except Lucy, held notes of the defendant. Subsequently, the Phoenix creditors engaged the services of Mr. Charles Staneker, a Phoenix attorney, to perform the necessary legal work to set up the proposed corporation.

About February 16, 1957, a meeting was had in Phoenix between Staneker, Lucy, and Mr. Troy Kennon, an attorney from Tulsa, Oklahoma, who was representing Lucy. The following day Lucy met with the other incorporators and Mr. Staneker. Mr. Kennon was not present.

On March 5 and 6, 1957, further meetings were had between Lucy and the other incorporators. These meetings were held in the office of Mr. Staneker who was also in attendance. At the meeting of March 5 the group adopted "Sphinx Head Mining Corporation" as the name for the proposed corporation, and officers were elected. Mr. Wermerskerchen was named president, Lucy vice-president, and Mr. Lyon secretary-treasurer.

At the March 6 meeting a division of interest was discussed. It was decided that one million shares of one dollar par value be authorized. Five hundred thousand shares were to be issued to Lucy and two hundred thousand to the Phoenix group (including Mr. Jones). The balance was to be held for possible future sale to the public.

In accordance with a suggestion of Mr. Staneker, Lucy executed an assignment of the Carisa Mining lease to herself and Dr. Rogers as trustees. The document, which was prepared by Mr. Staneker, bears no date, but it was Lucy's testimony that she signed the same at the meeting of March 6. This assignment read, in part, as follows:

"Whereas, the said Lucy Deluke, now Lucy Deluke Jones, as assignee of the rights of Louis C. Deluke in said lease desires to make a further assignment thereof in trust for the

benefit of herself and others who have heretofore loaned or advanced sums of money to Louis C. Deluke, and,

"Whereas, it is deemed desirable by the undersigned and certain of the persons for whose benefit this assignment is made, to form a corporation to which, upon organization, the lease hereby assigned will be transferred and for which the proposed corporation will cause to be issued shares of stock to the persons for whose benefit this assignment is made in such amounts as shall hereafter be determined by the first constituted Board of Directors of the proposed corporation, which shall include the undersigned and Dr. William J. Rogers of Phoenix, Arizona, and such others as they shall jointly agree on and which said proposed corporation shall be organized forthwith."

Articles of incorporation were prepared by Mr. Staneker and filed with the Arizona Corporation Commission on March 28, 1957. All of the incorporators were made members of the board of directors. The first meeting of this board was held April 16, 1957, at Mr. Staneker's office. All members were present, except Mr. Dansak. Mr. Staneker was also in attendance. The proposed by-laws prepared by Mr. Staneker were adopted and Lucy and Dr. Rogers assigned the mining lease to the corporation. Also, at this meeting, Mr.

Staneker advised the group that it would be wise to change the proposed division of stock.

Another meeting was held the following evening, April 17, 1957, in Mr. Staneker's office. He was not present, but all of the board members attended. At this meeting a voting trust of Lucy's stock was set up. A motion to approve the division of interest agreed upon at the March 6 meeting failed to pass. It was suggested instead that each incorporator receive one-half of the stock which had been allocated at the meeting of March 6. Both Lucy and her husband voiced their opposition to the suggestion and walked out of the meeting. After they left, the remaining members of the board adopted the newly-proposed division of interest.

The only asset that the corporation ever had was the mining lease. Other than money for organizational expenses, none of the incorporators, other than Lucy, contributed any cash or property to the corporation. Following the March 6 meeting, efforts were made by the Phoenix group to obtain financial assistance from the federal government to develop the mine. Subsequently, in April, 1958, the corporation was dissolved at which time the lease was not included as an asset. No stock certificates were ever issued.

Lucy testified that the mining lease was assigned to the corporation for the con-

sideration that the plaintiffs and the other incorporators discharge the indebtedness of the defendant as evidenced by the promissory notes which they held. These notes were never delivered to Lucy or the defendant. It does not appear from the record that Lucy at any time requested delivery of the notes. Both of the plaintiffs testified and denied, unequivocally, that they had ever agreed to discharge the obligations of the defendant in return for Lucy's assignment of the lease to the corporation.

The trial court found that the plaintiffs had not agreed with Lucy to cancel defendant's notes and that board of directors had not agreed upon a division of the stock of the new corporation as to Lucy and that the purpose of any purported agreement between plaintiffs and Lucy was frustrated through no fault of the plaintiffs.

Defendant first contends that the lower court erred in failing to find that Lucy and plaintiffs had an agreement whereby the defendant's notes were to be discharged, which agreement was consummated on March 6, 1957, when the mining lease was assigned by Lucy in trust for the corporation.

■ While Lucy testified as to the agreement, and inferences can be drawn from the circumstances surrounding the formation of the corporation, nevertheless the trial judge saw fit to believe the testimony of the plaintiffs and disbelieve that of Lucy. This being a case at law it follows that this appeal is upon questions of law alone. This court cannot pass upon the weight of the evidence, nor determine conflicts therein, but can only determine whether or not the findings and judgment of the trial court find substantial support in the evidence. In so examining the evidence, all reasonable presumptions are in favor of such findings and judgment, and the evidence must be considered in the light most favorable to them.[1]

■ Applying the foregoing principles to the case at hand, we hold that there is substantial evidence to sustain the lower court's finding that there was no agreement between the plaintiffs and Lucy whereby the defendant's obligations were discharged. In view of this determination it is unnecessary to consider the finding that the purpose of the purported agreement had been frustrated.

■ During the course of the trial, the defendant called Mr. Troy Kennon as a witness to testify concerning the conversation he had with Mr. Staneker in February, 1957. Upon timely objection by counsel for plaintiffs, the trial judge refused to allow this testimony. The testimony was excluded upon the ground that

1. Sine v. Salt Lake Transp. Co., 106 Utah 289, 147 P.2d 875.

 

the authority of Staneker to act as agent for the plaintiffs with regard to the promissory notes could not be shown by his admissions, and upon the further ground that the testimony would be hearsay. The counsel for the defendant then made the following proffer of proof:

"Mr. Pace: I will state what Mr. Kennon would testify. He had examined and satisfied himself in talking to the men in this corporation they were transfering all of the legal obligations of Mr. Louis Deluke for Lucy Deluke signing her property to the corporation and he advised there were no problems in the transaction, and he advised his client to go ahead with the agreement."

An analysis of this offer of proof reveals that the witness would testify as to his state of mind and what he advised his client. Such testimony is clearly inadmissible. An offer of proof must be certain, sufficient, and intelligible and must definitely state the facts sought to be proved. It must show the materiality, competency, and relevancy of the evidence offered.[2] The instant proffer is certainly deficient under these standards and, therefore, it follows that the lower court did not err in excluding the testimony of Mr. Kennon.

Judgment affirmed. Costs to plaintiffs.

WADE, C. J., and McDONOUGH, HENRIOD, and CROCKETT, JJ., concur.

2. 88 C.J.S. Trial § 80 p. 184; Tomlinson v. Bean, 26 Wash.2d 354, 173 P.2d 972.