Ellett, J., dissented in opinion in which Callister, C. J., concurred.

500 P.2d 75

**Kenneth H. LINDQUIST et al., Plaintiffs and Respondents,**

**v.**

**MR. STEAK, INC., Defendant and Appellant.**

**No. 12663.**

Supreme Court of Utah.

July 28, 1972.

Howard & Lewis, Don R. Strong, Provo, for appellant.

Dallas H. Young Jr., Provo, for respondents.

TUCKETT, Justice:

The plaintiffs are all of the shareholders of the stock in Provo Steak, Inc., and they commenced these proceedings claiming that the defendant breached a contract wherein

it agreed to purchase all of the shares from the plaintiffs. From a judgment in favor of the plaintiffs, the defendant has appealed.

Provo Steak, Inc. established and was operating a restaurant business in Provo, Utah. The business was established and was operating pursuant to the terms of a franchise agreement entered into between Provo Steak, Inc. and Mr. Steak, Inc. The restaurant operated at a loss and the defendant called upon the shareholders to make additional contributions to the capital of the business to cover the losses. Plaintiffs declined to make further contributions, and after some negotiations defendant orally agreed to buy all of the stock of the plaintiffs. The offer was made in March, 1969, wherein the defendant proposed to pay an equivalent of the book value of the stock providing all of the shareholders agreed to sell. A final determination of the book value of the stock was made on May 15, 1969, and the value was determined to be $5.77 per share for the 3,600 shares outstanding.

As of August 5, 1969, 1,900 shares had been tendered to the defendant, which represented approximately 52 per cent of the total. By a letter dated August 6, 1969, the defendant withdrew and rescinded its offer to purchase. It was stipulated at the pretrial that the terms of the offer were as set forth in the letter (Exhibit 1). It is noted that no time for the performance and delivery of the shares was specified therein. The balance of the shares was tendered to the defendant on November 6, 1969.

On April 6, 1969, the assets and control of the restaurant business of Provo Steak, Inc. were taken over by the defendant. The court found that the defendant assumed control and possession of the assets of the business pursuant to its offer to purchase the shares of stock owned by the plaintiffs and their acceptance. On August 6th, at the time the defendant elected to cancel and rescind its offer to purchase, it did not tender back the assets or control of the business.

The trial court found that the terms of the offer had been substantially complied with prior to August 6th and that the delay in the delivery of the stock to the defendant resulted from inadvertence and an oversight on the part of one of the plaintiffs. The court further found that the defendant suffered no financial detriment by reason of the delay, and that the franchise owned by Provo Steak, Inc. was subsequently sold by the defendant to a third person. The court concluded that time was not of the essence in the contract entered into between the parties, and that the plaintiffs had fully performed the contract by their tender of the stock on November 7, 1969. The court thereupon entered judgment for the plaintiffs.

On appeal the defendant assigns as error the findings of the court below that the plaintiffs had substantially performed the conditions of the offer to purchase prior to its rescission, and that the defendant's assumption of the control and possession of the assets of Provo Steak, Inc. was pursuant to the agreement to sell the stock. These are issues of fact rather than issues of law, and our examination of the record reveals that the findings are supported by substantial evidence, and under the rules of traditional appellate review this court will not reverse.[1]

The judgment of the court below is affirmed. Respondents are entitled to costs.

HENRIOD and CROCKETT, JJ., concur.

ELLETT, Justice (dissenting):

I dissent.

Mr. Steak is a corporation with 210 franchised associates in 42 states of the Union, one of which was Provo Steak, a Utah corporation. Since its associates are nationwide, Mr. Steak insists that each maintain the same high standard and image as all of the others. To insure this uniformity the franchise agreement provides that the manager of an associate must invest therein at least $5,250 and that he own a minimum of 15 per cent of the stock issued by the associate. It further provides that the manager be trained by Mr. Steak and that he assign his stock to be held in escrow to assure proper operation of the associate venture.

Under the franchise agreements Mr. Steak secures a suitable tract of land, causes to be erected thereon a unique building and selects equipment therefor. It is liable for the rentals to be paid and requires the associate to reimburse it for the exact amount which it pays.

In case the manager fails to follow directions and recommendations the agreement provides that Mr. Steak may remove him from the active operation of the business and replace him with another individual chosen by Mr. Steak. It further provides that when a manager is removed his stock will be transferred to the new manager and he will be paid the book value thereof, the amount for which it is sold to the new manager, or the sum of $5,250, whichever is the greater amount.

Mr. Steak was not being reimbursed for its expenses and Provo Steak was not being run successfully. The manager was not following directions and recommendations made by Mr. Steak. Pursuant to the franchise agreement and to prevent further loss to itself and to the stockholders of the associate Mr. Steak removed Mr. Lindquist

1. Dansak v. Deluke, 12 Utah 2d 302, 366 P.2d 67.

as manager and placed one of its experienced employees in charge of the operation until a new manager could be found and trained.

The associate could not pay its obligations and since the stockholders did not desire to make further contribution to Provo Steak, the defendant herein during March 1969 offered to buy 100 per cent of the stock and pay the plaintiffs the book value therefor.

There is good reason why 100 per cent of the stock should be purchased. To put Provo Steak on a successful operational basis would require that a large sum of money be invested. Those stockholders who would not sell their stock would thereby stand to have a windfall without advancing any cash at all.

While the plaintiffs now say, and the court found, that they accepted the offer to purchase all of the stock, the fact is that from March until July 2, 1969, there were only 385 shares tendered to the defendant. No further tender was made until August 5, 1969, when a total of 1900 shares was offered to the defendant. Since there were 3600 shares issued there were 1700 shares not tendered and the next day Mr. Steak withdrew its offer to purchase the stock. It was not until November 7, 1969, that all of the plaintiffs tendered their stock—some three months after the offer was withdrawn.

The court found that on August 5, 1969, there was a substantial compliance with the acceptance. But 1900 shares is only 52.77 per cent of the 3600 outstanding and a new theory of mathematics is required to sustain that finding.

The main opinion says there was no time limit as to when the tender of the 100 per cent of stock was to be made. It does not matter for the reason that the offer could be withdrawn at any time before the acceptance was made and that is exactly what was done in this case.

The board of directors of Provo Steak advised the defendant that the offer had been accepted, but the board of directors could only represent the corporation and the corporation had no interest in the matter at all. The determination to sell or not to sell the stock would have to be made by each stockholder. The individual stockholders never notified Mr. Steak orally, in writing, or otherwise that they would accept the offer to buy. As a matter of fact some of the stockholders did not know about the offer when the board of directors purported to notify the defendant of the acceptance.

Even if the stockholders had all agreed to sell their stock at a fixed price they would have to complete the contract within a reasonable time because of the fluctuation in the book value of their stock. Provo Steak had been losing money in its op-

eration and as the losses continued to mount, the value of the stock would decrease accordingly. Therefore I cannot believe that a reasonable time for delivery would be the seven months taken by the plaintiffs to tender the stock to the defendant.

The only testimony regarding the offer to buy was given by the president of the defendant and he stated that the agreement was only to buy if delivery of all of the stock would be made within 30 days of the offer.

The franchise did not belong to these plaintiffs. It was an asset of the Provo Steak and that corporation in another action permitted a judgment to be rendered against it and in favor of this defendant in the amount of $18,775.07. These plaintiffs are making no claim here because the corporation may have lost its franchise.

The plaintiff Mr. Lindquist was the original manager of Provo Steak. However, he never appeared at the trial and the only thing which the other plaintiffs knew about the offer to purchase stock was what he had told them. The testimony regarding that matter and the reason for removing the manager was given by the president of the defendant and was not disputed.

There is no evidence in the record to justify a finding that the defendant assumed control of the business pursuant to its offer to purchase the stock. The testimony clearly shows that the manager was replaced pursuant to the franchise agreement and that he was replaced on April 6, 1969, some three months prior to the tender of a single share of the outstanding stock and seven months prior to any purported tender of 100 per cent of the stock.

The court further found that Mr. Steak suffered no financial detriment by reason of a delay in tendering the stock until November 7, 1969. To me that seems immaterial. Whether a contract will be profitable or not has nothing whatever to do with the right of a party to withdraw an offer before it is accepted.

Whatever the rights of Mr. Lindquist as replaced manager may be with reference to his stock in escrow, he is not entitled to recover under the claim he now makes along with the other stockholders.

Under the evidence given these plaintiffs cannot prevail and the defendant is entitled to a judgment for no cause of action. I would therefore reverse the judgment rendered and award costs to the appellant.

CALLISTER, C. J., concurs in the views expressed in the dissenting opinion of ELLETT, J.