[No. 36250. En Banc. August 8, 1963.]

CATHERINE M. DAKIN, *Respondent*, v. OLCOTT W. DAKIN, *Appellant*.*

*Arthur Grunbaum* and *Alvin J. Ziontz*, for appellant.

*Reported in 384 P. (2d) 639.

*Jonson & Jonson, Bernice Jonson,* and *Constance Canfield,* for respondent.

HUNTER, J.—Olcott W. Dakin, the husband (defendant), appeals from a decree awarding a divorce to Catherine M. Dakin, his wife (plaintiff), and dismissing his cross complaint for divorce with prejudice.

Olcott and Catherine Dakin were married at Watertown, New York, in 1936. They moved to Seattle where the defendant worked at various jobs until, in 1957, he purchased a small transfer and storage company. The plaintiff also obtained employment during this period in various positions within the general field of social work.

The defendant is presently the president and manager of three transfer businesses. He purchased Chesley Transfer Company, Inc., in 1957 and, shortly thereafter, organized Chesley Overseas, Inc. Later, he bought Yukon Transfer Company which, unlike the other two companies, is a sole proprietorship. These three businesses are one-man businesses which completely depend upon the defendant's attention.

In 1939, the plaintiff invited Karen Frolund, a co-worker at the Welfare Department, to be a guest at her home. After Karen married in 1941, the two families remained close friends and saw each other often. Sometime in 1948 (approximately), the defendant commenced seeing Karen privately despite the fact the plaintiff previously had remonstrated his excessive attentions to her. From 1949 on, the defendant and Karen secretly met at various locations in and around Seattle to prevent the plaintiff from discovering their relationship. Despite the couple's caution, the plaintiff suspected that her husband was meeting another woman and accused him of it. The defendant denied her accusations and, in rebuff, told her she was obsessed with jealousy.

In the fall of 1957, the defendant and Karen told the plaintiff that they had been in love with each other for nine years. They requested her to give the defendant a divorce, but she refused to do so. Despite her refusal, the defend-

ant continued to live, off and on, with the plaintiff. Sometimes he abused her, both physically and mentally; other times he was very attentive and kind. During this period, however, the defendant kept up his relationship with Karen. This conduct left the plaintiff in a state of emotional turmoil.

Mr. and Mrs. Dakin separated permanently in 1959, in which year the defendant agreed to pay to the plaintiff $300 per month for temporary support money provided a divorce action was commenced prior to February 18, 1960.

There were no children born of this marriage. At the commencement of this action, the plaintiff was 53 years old and the defendant was 54 years old. The plaintiff is an extremely nervous person and has been receiving various medical treatments. Although she has had two years of college, she has no specific trade or profession. The defendant is a healthy man who is engaged in managing the transfer businesses described above.

At the time of trial, the property before the court consisted of the community real and personal property, valued at approximately $24,404, the separate property belonging to the defendant, valued at approximately $39,233, and the three transfer businesses, which were not valued.

The income which the defendant derived from the businesses was disputed. The plaintiff produced certain balance sheets (which were inconsistent with the defendant's balance sheets) and federal income tax W-2 forms indicating the defendant earned $18,000 per year from two of the companies. The defendant testified that he made only $575 per month and that the discrepancies in the balance sheet figures were due to the fact that, as shown by the book accounts, the businesses owed him unpaid salaries which they did not have funds to cover.

The trial court found that the plaintiff should be granted a decree of divorce and that the defendant's cross complaint for divorce should be dismissed with prejudice; that the plaintiff should be given the family residence and vacant lot, together with certain household furnishings, an automobile, $7,500 in cash and alimony in the amount of $300 per month until she should remarry or die; that the de-

fendant should be given the interests in the transfer businesses, his separate property, and the remaining community property; and that the defendant should be required to maintain the life insurance until the plaintiff should remarry or die, to pay certain debts, and to pay $1,000 as reasonable attorneys' fees as well as $400 for suit money previously allowed. A decree of divorce incorporating the above findings was entered from which the defendant appeals.

The defendant assigns error to the trial court's awarding of $300 per month as alimony for the plaintiff until she marries or dies.

The defendant contends the evidence does not support the trial court's finding that, during 1960, he earned $18,000 from his businesses and that the sum of $300 per month as alimony is reasonable. He contends the evidence shows that he made only $575 per month and that it is therefore inequitable to require him to pay alimony in the sum of $300 per month.

The evidence regarding the defendant's income was in sharp dispute, and we need only determine whether there is substantial evidence in the record to support the trial court's finding on this factual issue. *Port of Seattle v. Blatz*, 59 Wn. (2d) 55, 365 P. (2d) 779 (1961). Taking the evidence most favorable to the plaintiff, the trial court could have believed the following:

The defendant filed federal income tax W-2 forms and paid federal income tax on $18,000 from Chesley Transfer Company, Inc., and Chesley Overseas, Inc. The balance sheets and profit and loss statements from these two companies indicate the defendant drew a salary of $9,000 from each. The balance sheet from Chesley Transfer Company, Inc., contradicts the defendant's testimony that the difference in income which he actually received and that which was owed by the company is found in the book entry for "advances due officer." No information was supplied showing the amount of wages received from Yukon Transfer Company. The defendant earned approximately $1,800 per year in royalties from Texas oil wells.

The foregoing evidence is substantial and supports the trial court's finding that the defendant earned at least $18,-000 during 1960. On the basis of this income, the award of $300 per month as alimony for the plaintiff was reasonable and must therefore be sustained.

The defendant contends, however, he was misled by the trial court into believing that he had adequately explained the financial records of the transfer businesses and that he need not bring additional financial records into the court or request his accountant to explain the accounting system. Assuming, arguendo, that the trial court erroneously misled him, such error cannot be said to have been prejudicial inasmuch as the defendant made no offer of proof, either during the course of the trial or *at his motion for a new trial*. The defendant has made no showing that, had he been given an opportunity to explain the records, he might have been able to prove that he earned $575 per month rather than $18,000 per year during 1960. This contention is therefore without merit.

The defendant further contends he should not be required to pay alimony of $300 per month for an indefinite period. He argues that, if justified at all, the plaintiff should be granted alimony of a temporary nature to be received during the period of her readjustment and rehabilitation and no longer.

The criterion adopted by this court for the allowance of alimony includes two factors: (1) the necessities of the wife, and (2) the financial ability of the husband. *Morgan v. Morgan*, 59 Wn. (2d) 639, 369 P. (2d) 516 (1962); *Murray v. Murray*, 26 Wn. (2d) 370, 174 P. (2d) 296 (1946).

The allowance of alimony is not governed by a fixed rule but necessarily depends on the facts and circumstances of each case. *Young v. Young*, 47 Wn. (2d) 497, 288 P. (2d) 463 (1955). The financial ability of the defendant has been discussed above. We now turn to the necessities of the plaintiff.

The record shows that the plaintiff has no children to support or care for; that she was 53 years of age at the commencement of this action; that she was extremely nerv-

ous and upset at the time of the trial; but, otherwise, she is an able-bodied woman; that, because of her past condition, she has been unable to maintain steady employment; that she attended teacher's college for 2 years and taught school for 4 years thereafter; and that she has had considerable experience as a social worker, although no formal training.

■ It is the policy of this state to place a duty upon the wife to gain employment, if possible. In *Morgan v. Morgan, supra*, we said:

"Alimony is not a matter of right. When the wife has the ability to earn a living, it is not the policy of the law of this state to give her a perpetual lien on her divorced husband's future income. *Warning v. Warning*, 40 Wn. (2d) 903, 247 P. (2d) 249 (1952); *Lockhart v. Lockhart*, 145 Wash. 210, 259 Pac. 385 (1927)."

We are of the opinion that the plaintiff in the instant case should not receive alimony until her remarriage or until her death. We think that she should be encouraged to rehabilitate herself and that, within a reasonable period, she may become self-supporting. Although she may have been nervous and upset prior to her decree of divorce, there is no evidence which indicates this condition is of a permanent nature. Except for this condition, she appears to be an able-bodied woman capable of future employment. We conclude that alimony should be awarded which is adequate for the purpose of providing for her during her transitional period. We cannot say, under the state of this record, what this period should be. Therefore, the trial court should be in a position to modify or terminate the alimony upon competent proof of changed conditions, if any, that may be established at future modification hearings. The divorce decree is therefore modified by awarding the plaintiff alimony in the amount of $300 per month until further order of the court.

■ The defendant contends it was error for the trial court to award the plaintiff $1,000 for her attorneys' fees and $400 for suit money.

RCW 26.08.090 provides:

"Pending an action for divorce or annulment the court may make, and by attachment enforce, such orders for the disposition of the persons, property and children of the parties as the court may deem right and proper, and such orders relative to the expenses of such action, including attorneys' fees, as will insure to the wife an efficient preparation of her case and a fair and impartial trial thereof. Upon the entry of judgment in the superior court, reasonable attorneys' fees may be awarded either party, in addition to statutory costs. Upon any appeal, the supreme court may in its discretion award reasonable attorneys' fees to either party for services on the appeal, in addition to statutory costs."

The awarding of suit money and attorneys' fees are matters within the sound discretion of the trial court, and its determination will not be reversed on appeal unless untenable or manifestly unreasonable. *Vernon v. Vernon*, 58 Wn. (2d) 499, 364 P. (2d) 429 (1961). The record discloses no abuse of discretion by the trial court in its award of suit money and attorneys' fees in the instant case.

■ The defendant contends the trial court erred in denying the defendant's cross complaint for divorce.

There is no merit in the defendant's contention that he, as well as his wife, should have been granted a divorce. He has not been prejudiced by the dismissal of his cross complaint since, as he concedes in his brief, there is sufficient evidence to support the awarding of a divorce to the plaintiff. A similar contention was raised in *Smith v. Smith*, 45 Wn. (2d) 672, 277 P. (2d) 339 (1954), in which we said:

"Appellant urges that the court erred in dismissing his complaint for a divorce. If this was error, it was not prejudicial, since the decree which was entered gives appellant the result he sought—a divorce of the parties. The principle here applied is similar to that which governs where both parties seek and obtain a divorce, but one party assigns as error the granting of a divorce to the opposite party. See *Merkel v. Merkel*, 39 Wn. (2d) 102, 234 P. (2d) 857 [1951], and cases there cited."

See, also, *Applegate v. Applegate*, 53 Wn. (2d) 635, 335 P. (2d) 595 (1959); *Skaare v. Skaare*, 52 Wn. (2d) 273, 324 P. (2d) 815 (1958).

The judgment of the trial court is affirmed as modified by this opinion which provides that the alimony award shall be in the sum of $300 per month until further order of the court.

The plaintiff will be allowed her costs on this appeal.

OTT, C. J., HILL, DONWORTH, WEAVER, ROSELLINI, HAMILTON, and HALE, JJ., concur.

FINLEY, J., concurs in the result.