[Nos. 37890, 38136, 37957.    Department One.    September 22, 1966.]

THE STATE OF WASHINGTON, *Respondent*, v. PETER JOHN
EICHMAN, *Appellant*.

*In the Matter of the Application for a Writ of Habeas
Corpus of* PETER JOHN EICHMAN, *Appellant, v.*
JACK PORTER, *Respondent*.

*In the Matter of the Application for a Writ of Habeas
Corpus of* PETER JOHN EICHMAN, *Petitioner,* v.
JACK PORTER, *Respondent.**

*Reported in 418 P.2d 418.

*James Gooding* (of *Reaugh, Hart, Allison, Caley, Mortimer & Prescott*), for appellant (Appointed counsel for appeal).

*Peter John Eichman,* pro se.

*Charles O. Carroll* and *Neal J. Shulman,* for respondent.

WEAVER, J.—This opinion is dispositive of three cases.

Procedurally, we are presented with (1) an appeal from a judgment and sentence entered after a jury verdict finding

defendant guilty of two counts of aiding and abetting grand larceny (case No. 37890); (2) an appeal from a denial of a writ of habeas corpus (case No. 38136); and (3) an original application for a writ of habeas corpus (case No. 37957).

Defendant is represented by court appointed counsel in his appeal from the judgment and sentence, but, as is permitted, he has submitted a brief supplementing that of his counsel. In the two habeas corpus cases, defendant represents himself.

### Case No. 37890

The evidence is sufficient, if believed by the jury, to support the following facts:

Three young women,[1] the Misses Judith Richied, Victoria Buchanan and Dinah Miller, were about to be evicted from their Seattle apartment when an acquaintance, defendant, moved into the same building, and agreed to let them live with him in his apartment. Miss Richied told defendant how she had stolen a birth certificate from one Judith Marshall so she could enter establishments serving alcoholic beverages.

Defendant informed the girls of a scheme by which all of them could profit materially by use of the false identification. The scheme involved opening a bank account under the name of Judith Marshall and writing insufficient fund checks against the account. Defendant allegedly stated that he had been successfully utilizing such a scheme for 8 years.

Miss Richied and Miss Buchanan agreed to participate in the scheme and wrote approximately 30 checks under defendant's direction. The girls eventually wished to cease their criminal activities, but their wishes were thwarted by defendant's threats to call their relatives or the police. Defendant allegedly exerted physical force against Miss Richied to insure her continuation in the scheme.

[1] At the time of the trial (July, 1964), two were 20 years old and one was 19. Miss Richied and Miss Buchanan both pleaded guilty to charges arising out of this incident. Both are on 3-year-deferred probation—one for grand larceny, the other for forgery. Miss Miller, although not a participant in the scheme, has a prior forgery conviction.

Despite these threats, the girls admitted that defendant frequently absented himself from the apartment and in fact allowed them to leave the apartment to go to the movies at nights. Defendant ceased living with the girls when he learned the police had knowledge of the scheme. However, even after defendant left, Miss Richied continued to write and cash bad checks.

Defendant, who testified in his own behalf, denies planning or participating in the scheme.

Defendant was charged on two counts of aiding and abetting grand larceny. Each count was for a separate check. He was found guilty on both counts and sentenced to not more than 15 years on each count, the sentences to run concurrently. His motion for a new trial was denied; hence, this appeal.

Counsel makes 4 assignments of error and defendant adds 13 of his own in his brief. The assignments of error are founded upon the contention that the trial, rather than being a trial on the counts charged, was actually a trial of defendant's character, based upon allegations of other unrelated and unproved acts of misconduct and crime. Specifically, the 17 assignments of error raise the following 5 questions.

(1) *Was there sufficient evidence to sustain a verdict of guilt?*

Defendant contends that the only evidence in support of the verdict was the testimony of the principals in the grand larceny charge and that uncorroborated testimony of a principal is not sufficient to convict for aiding and abetting. The facts do not support the first contention and the law does not support the second.

The testimony of three employees of the stores where the checks were cashed and the testimony of Miss Miller, who was not a participant, connect defendant with the commission of the crime charged. Where there is corroborating testimony, it is sufficient if it fairly tends to connect the accused with the commission of the crime charged. *State v. Gross*, 31 Wn.2d 202, 196 P.2d 297 (1948).

The fact that a witness is an accomplice goes only to his credibility. *State v. Claassen,* 131 Wash. 598, 230 Pac. 825 (1924).

(2) *Did the court unreasonably restrict defendant's right of cross-examination?*

Defendant maintains that on numerous occasions during the trial his right of cross-examination was unreasonably restricted. A careful reading of the record discloses that defendant's position on this issue is not well-taken.

█ The trial court excluded certain questioning of Miss Richied and Miss Buchanan as to why they participated in the scheme. The trial court's rulings were proper. Whether the women entered the scheme was material, but their reasons for so doing were immaterial. Further, on one occasion the question asked of Miss Richied was repetitious since it had previously been asked and answered. Where cross-examination has attained the object sought by the cross-examiner, it is not an abuse of the trial court's discretion to refuse a repetition of the examination. *State v. Kwan,* 174 Wash. 528, 25 P.2d 104 (1933).

█ Miss Buchanan was asked, but refused to answer, a question which, if answered, might have rendered her liable for criminal prosecution. The trial court properly informed her that she could decline to answer the question on the grounds of self-incrimination. Further, the restriction was proper because the answer would have been immaterial to the question of defendant's guilt. *State v. Willey,* 165 Wash. 247, 5 P.2d 319 (1931). Other questions asked of Miss Buchanan were properly disallowed since they were argumentative.

█ As we stated in *State v. Robinson,* 61 Wn.2d 107, 109, 377 P.2d 248 (1962),

The scope of cross-examination is peculiarly within the province of the trial judge. We will not disturb his determination of its boundaries unless there is a manifest abuse of discretion.

In the instant case there was no manifest abuse of discretion.

(3) *Did the court err in allowing evidence of other misconduct of defendant?*

■ Defendant first contends that the trial court erroneously allowed reference to his conviction in case No. 38136, discussed *infra*. This contention is without merit because defendant himself brought the prior conviction into issue when he denied having been previously charged with or convicted of a crime involving bad checks.

Defendant next contends that the court erred in allowing testimony which tended to show that he had threatened the life of Miss Richied. It is his position that reference to the threats prejudiced his rights pertaining to the crime charged in that he was presented to the jury as "a bad person, one who was likely to commit crimes." Citing *State v. Emmanuel*, 42 Wn.2d 1, 253 P.2d 386 (1953), defendant attempts to fit the instant trial within the rule that since an accused must be tried only on the offense charged, evidence of unrelated acts of misconduct may not be admitted.

■ The state's theory was that defendant engaged two women to carry out his check cashing scheme. Because defendant was charged with aiding and abetting, rather than with writing or cashing the checks, it was necessary for the state to establish some affirmative showing of aid, encouragement or support. The challenged testimony was offered, not as character impeachment evidence but as proof of defendant's active and affirmative participation as an aider and abettor. It was a proper means of proving defendant's intent and active role in the scheme he had encouraged and from which he was trying to prevent the women from withdrawing.

Defendant also asserts that he was prejudiced by two implications that he was homosexual. We cannot agree. One of the allusions to homosexuality did not pertain to defendant and in no way could it be connected to him. The other came about via the following colloquy between Miss Buchanan and defense counsel:

Q. Why did you move in with a man, with him? A. There is no problem there with him. Q. No problem there? A. No, he is gay.

■ Since the answer was responsive to the question propounded, the motion to strike was properly denied.

Further, in view of the fact that we are not convinced that everyone equates "gay" with homosexuality, we cannot say that the jury was prejudiced.

(4) *Was the prosecution's closing argument prejudicial?*

Defendant contends that the prosecutor made false and prejudicial statements to the jury in stating what was necessary to convict. The record does not substantiate this contention.

Defendant then alleges misconduct by the prosecutor's reference to a speech former President Eisenhower gave to the 1964 Republican National Convention. We find the prosecutor's statements unwarranted[2] but not prejudicial since the trial court sustained an objection to the statements and informed the jury that the statement was mere argument and not evidence.

■ Defendant next asserts that he was seriously prejudiced by the prosecution's continually attributing 8 years of crime to him when in fact 8 years of crime had not been proved. We agree. At least three times the prosecutor made direct reference to defendant's 8 years of crime. Yet, the only conviction ever proved was the conviction in case No. 38136, *infra*.

Miss Buchanan testified that she heard defendant tell Miss Richied "I have done this about eight years," referring to cashing bad checks. In his closing argument the prosecutor seemingly implied that this statement was made on the witness stand by defendant. The prosecutor stated: *"You will recall when he was first describing it, he said, 'I have done this eight years. I know how to do it and get away with it. I have done it before.' "* (Italics ours.)

We cannot approve of the prosecutor's attributing Miss Buchanan's testimony to defendant. To make matters worse, although there was absolutely no proof of 8 years of crime, the prosecutor went on to say:

---

[2]Because President Eisenhower's statements regarding a trend of crimes of violence on the streets was unrelated to the crime with which Eichman was charged, the trial court properly sustained the objection raised.

This is not an amateur job. These girls could not have fabricated the thing by themselves. It would have been impossible. It would have taken someone with the experience of Mr. Eichman, *eight years of crime.* (Italics ours.)

In reference to why defendant's name did not appear on any of the checks, the prosecution stated:

This man is a professional. That is why his name doesn't appear. That is why he is so clever to evade the law. That is why he can get out of it for eight years.

Since there was no proof of 8 years of crime, we conclude that the cumulative effect of these references to 8 years of criminal activity constitutes prejudicial reversible error.[3]

(5) *Did the court err in refusing to curtail reference to numerous other allegedly bad checks?*

Although defendant was charged with two counts involving two checks, the state elicited testimony, over objections, showing that defendant may have been involved with approximately 30 bad checks. Defendant asserts that this was going beyond the crime charged; he was only prepared to meet the two charged in the information. None of the alleged other bad checks were admitted or offered in evidence.

The state tries to support its position by referring us to such cases as *State v. Vindhurst,* 63 Wn.2d 607, 388 P.2d 552 (1964), wherein we held evidence of other crimes committed by the accused admissible and competent to establish a common scheme, plan, design or course of conduct. However, just because testimony is offered to show a common scheme does not ipso facto make the testimony admissible. Its admissibility must depend upon the facts

---

[3]Relying on *State v. Taylor,* 47 Wn.2d 213, 287 P.2d 298 (1955), the state contends that the error is not reversible since defendant had not requested the court to instruct the jury to disregard and then excepted to the court's refusal to do so. The state overlooks *State v. LaPorte,* 58 Wn.2d 816, 365 P.2d 24 (1961), in which we recognized an exception to the general rule of *Taylor* in a case such as the instant one in which the prosecutor brings before the jury extraneous matters either not in the record or so prejudicial that an instruction would not cure them.

of each case. The state relies on *State v. Jeane,* 35 Wn.2d 423, 213 P.2d 633 (1950). In *Jeane,* defendant was charged with grand larceny by check. This court sustained the admission in evidence of other checks as being relevant to the issue of defendant's intent to defraud. Under the facts of *Jeane,* evidence of "other checks" was properly admitted because the "other checks" were admitted into evidence. Under the facts of the instant case, evidence of "other checks" should have been excluded since the "other checks" had not been offered in evidence. Since they were not introduced in evidence, there was no opportunity to cross-examine. There may not actually have been any other checks. The only evidence of the existence of the other checks was the testimony of the two principals, Misses Richied and Buchanan. This evidence was prejudicial to defendant since he could not prove the negative. Under the information filed against him, defendant was required to defend against charges relating to two checks, not thirty.

Accordingly, we order a new trial not inconsistent with the views herein expressed.

### No. 38136

Prior to his superior court conviction in No. 37890, defendant was convicted in a Seattle justice court for unlawful issuance of a bank check. Cause No. 38136 is an appeal from the King County Superior Court denial of Eichman's petition for a writ of habeas corpus.

Since justice court is not a court of record, we do not know definitely what transpired there. Thus an objective evaluation of the merits of the alleged errors in justice court is impossible. If what transpired there is as petitioner alleged, this case would be a classic illustration of the importance of the right to counsel and also of the importance of the rights of indigents to counsel to assure them of the safeguards necessary to a fair trial.

However, at the time Eichman petitioned for a writ of habeas corpus, he was no longer being held in jail under the justice court conviction. The balance of his sentence had previously been suspended and an order of

release on that charge had been entered. *He was being held under a valid superior court judgment (No. 37890) at the time he petitioned regarding the justice court conviction.* As we stated in *In re Pitts v. Rhay,* 64 Wn.2d 481, 392 P.2d 234 (1964), a prisoner detained by reason of a valid judgment and sentence is not entitled to habeas corpus relief.

To correct any alleged errors of the justice court, the remedy was by appeal. A petition for a writ of habeas corpus is not a substitute for an appeal. *In re Pettit v. Rhay,* 62 Wn.2d 515, 383 P.2d 889 (1963). *Since defendant is no longer being held on the charge from which his petition stems, the writ sought cannot issue.*

### No. 37957

Prior to the King County charges involved in No. 37890, charges were filed against defendant in Snohomish County relating to unlawful issuance of a bad check. He was arrested, but was released after posting bail. This represents an original application for habeas corpus, in which defendant asks for dismissal of all charges pending against him in Snohomish County. He misconceives the nature of the remedy sought. He is not currently in the Snohomish County jail. He is in the King County jail under the No. 37890 sentence. Further, the charges against him in Snohomish County have been dismissed. Accordingly, the petition is denied.

ROSELLINI, C. J., HILL and HUNTER, JJ., and BARNETT, J. Pro Tem., concur.