[No. 38891.     Department One.     August 31, 1967.]

ALBERT G. SMITH, *Appellant*, v. WALTER W. SEIBLY *et al.*,
*Respondents.**

*Peterson, Taylor & Day,* by *Stanley D. Taylor,* for appellant.

*Minnick, Hahner & Hubbard* and *R. Michael Kight,* for respondents.

SHORETT, J.†—This litigation results from a vasectomy operation performed upon the person of Albert G. Smith, the appellant, by the respondent, Walter W. Seibly, a practicing physician at Clarkston. At the time of the operation the appellant was 18 years old, married and the father of a child. He was gainfully employed, supported his family and maintained a home for himself, his wife and child. He was

*Reported in 431 P.2d 719.

---

†Judge Shorett is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

afflicted with a progressive muscular disease, myasthenia gravis, which is chronic and incurable and would possibly affect his future earning capacity and ability to support his family. Under these circumstances he and his wife decided to limit their family by having appellant sterilized.

The family doctor refused to perform the operation because of appellant's youth and the doctor's knowledge of the instability of the marriage. Whereupon, appellant and his wife sought another doctor and on March 9, 1961, visited the respondent's offices requesting that respondent perform the vasectomy. The appellant represented that the sterilization was desired because of his affliction with myasthenia gravis. Respondent illustrated the operation with a diagram and explained that it would result in permanent sterilization. There is a dispute as to whether the appellant represented that he was of legal age. The respondent read aloud and presented the following statement to appellant and his wife:

To WHOM IT MAY CONCERN: We, the undersigned, hereby consent to the sterilization operation to be performed on the husband, having been told that the operation is a permanent thing, that there is no chance for a reestablishment of a viable sperm in the semen.

The doctor then told appellant and his wife to go home, think about the operation and if they still wished it performed, sign the paper and return to his office.

Twelve days later appellant returned, presented the consent signed by himself and his wife, and the operation was performed.

After appellant reached his majority, he brought this action alleging that the respondent was negligent in performing the vasectomy upon an infant of 18 years, was negligent in failing to explain to appellant the permanent consequences of the surgery, and that such surgery was performed without valid permission. The appellant asked damages in the amount of $52,000. The respondent's answer denied the allegations of negligence and liability and alleged that the appellant was barred from recovery because he had signed a consent to the operation.

Although the complaint contained allegations based on a theory of negligence, all parties agree that the trial court properly submitted the case to the jury on an assault theory. One of the instructions read: ". . . The vasectomy is an assault and battery if surgery was performed without valid consent." Appellant's theory was that a minor could not give valid consent to such surgery. The respondent's view, adopted by the trial court, was that under some conditions a minor may be emancipated for the purpose of giving consent to surgery. The jury returned a verdict for respondent and judgment having been entered thereon, this appeal followed.

Error is assigned to the exclusion of testimony by a Richland psychiatrist on the standard of medical care required for the performance of a vasectomy in the Clarkston area. After the court had sustained an objection to this testimony, the appellant made no offer of proof. We therefore have no way of knowing what testimony would have been presented and we cannot speculate on its content, for the rule in this jurisdiction is:

> t is the duty of a party to make clear to the trial court what it is that he offers in proof, and the reason why he deems the offer admissible over the objections of his opponent, so that the court may make an informed ruling. If the party fails to so aid the trial court, then the appellate court will not make assumptions in favor of the rejected offer. (Citing cases.) *Tomlinson v. Bean,* 26 Wn.2d 354, 361, 173 P.2d 972 (1964).

An offer of proof is necessary to save the point on appeal. *Cameron v. Boone,* 62 Wn.2d 420, 383 P.2d 277 (1963); *Dakin v. Dakin,* 62 Wn.2d 687, 384 P.2d 639 (1963); *Blood v. Allied Stores Corp.,* 62 Wn.2d 187, 381 P.2d 742 (1963).

The next error assigned by appellant relates to the trial court's allowance of cross-examination of the plaintiff concerning his failure to make support payments for his child in accordance with the requirements of a divorce decree. Sometime after the vasectomy was performed appellant and his wife were divorced and appellant had not supported the child in accordance with the requirements of

the decree of divorce. Ordinarily, testimony upon the failure to support would be completely irrelevant to the issue presented in this case. However, appellant had presented medical testimony relating to his concern for his child, his great desire to have children of his own, and the psychological damage caused by the vasectomy. Thus, in his effort to prove damages, the appellant injected into the case the topic of his interest and concern with children. This gave the trial court a wide latitude in permitting cross-examination. In *State v. Robinson*, 61 Wn.2d 107, 109, 377 P.2d 248 (1962), we said:

> The scope of cross-examination is peculiarly within the province of the trial judge. We will not disturb his determination of its boundaries unless there is a manifest abuse of discretion. [Citing cases.]

> Since defendant introduced the issue, he cannot be heard to complain of the limited cross-examination permitted by the trial court. *State v. King*, 58 Wn. (2d) 77, 78, 360 P. (2d) 757 (1961).

See also *State v. Eichman,* 69 Wn.2d 327, 418 P.2d 418 (1966); *State v. Oldham,* 56 Wn.2d 696, 355 P.2d 9 (1960); *Miller v. Edwards*, 25 Wn.2d 635, 171 P.2d 821 (1946).

Appellant next contends that error was committed in giving instructions Nos. 13, 14, 15 and 16[1] and in refusing to

---

[1]"You are instructed that a minor who is capable of understanding or appreciating the consequences of surgery is legally capable of giving the consent that a physician is required to obtain from his patient before performing surgery." (Instruction No. 13.)

"In considering a minor's capability of understanding or appreciating the consequences, you may consider the minor's age, intelligence, maturity, training and experience, marital status, control or the absence thereof by his parents, whether he was dependent or self-supporting and whether his general conduct was that of an adult or that of a child." (Instruction No. 14.)

"You are instructed that a release or consent made by an infant is voidable and subject to disaffirment, unless because the infant misrepresented his majority, or engaged in business as an adult, the other person has good reason to believe the infant was capable of giving his consent." (Instruction No. 15.)

"You are instructed that a minor is bound by his consent to submit to surgery unless he disaffirms such consent within a reasonable time after he attains his majority." (Instruction No. 16.)

give appellant's requested instructions Nos. 7 and 8[2].

The exceptions taken to the trial court's action on these instructions were all on one ground, namely, that appellant, being a minor, could not give consent to the operation, that his consent was void, and that parental consent was necessary to insulate respondent from liability. It has long been recognized in this state that for certain purposes, emancipation of minors may occur even in the absence of a statute. *In re Hollopeter*, 52 Wash. 41, 100 Pac. 159 (1909); *State v. McPherson*, 72 Wash. 371, 130 Pac. 481 (1913); *Morgan v. Cunningham,* 109 Wash. 105, 186 Pac. 309 (1919).

Respondent contends that appellant was emancipated for the purpose of giving consent to the operation, or, at least that a jury question was presented on this issue. In *American Prods. Co. v. Villwock*, 7 Wn.2d 246, 267-68, 109 P.2d 570, 132 A.L.R. 1010 (1941), this court quoted from 1 Schouler, Domestic Relations (6th ed.) 897, § 807 as follows:

[2]"You are instructed that under the law of the State of Washington, a male less than 21 years old is an infant.

"You are further instructed that no operation may be performed by a surgeon upon an infant unless consent is first obtained of the natural guardian or parents of the infant, unless the operation is for the benefit of the infant and is done with the purpose of saving his life or limb.

"Therefore, if you find from the evidence in this case that the defendant Walter Seibly performed a surgical operation upon the plaintiff at a time when the plaintiff was less than 21 years old, and if you further find that at the time of said operation the defendant Walter Seibly had not obtained the consent of the parents of the plaintiff, then you should completely disregard any evidence of a release having been signed by the plaintiff.

"This is the law, even though you should find that the plaintiff was married at the time the operation was performed." (Proposed instruction No. 7.)

"You are instructed that in this case the Court has determined as a matter of law that the operation performed by the defendant Seibly on the plaintiff was an unauthorized operation.

"You are therefore directed to return a verdict in favor of the plaintiff and against the defendants Seibly, and fix damages in accordance with the instructions the Court has given you concerning damages." (Proposed instruction No. 8.)

" 'Emancipation' of a child is the relinquishment by the parent of control and authority over the child, conferring on him the right to his earnings and terminating the parent's legal duty to support the child. It may be express, as by voluntary agreement of parent and child, or implied from such acts and conduct as import consent; it may be conditional or absolute, complete or partial. . . ."

To the same effect see *DeLay v. DeLay*, 54 Wn.2d 63, 337 P.2d 1057 (1959). The subject "What amounts to implied emancipation of a minor child" is annotated in 165 A.L.R. 723, 745, where it is stated:

[I]t is settled by the weight of authority that the marriage of a minor with parent's consent (according to some cases) or even without the parent's consent (according to other cases) works an emancipation, for the reason that the marriage gives rise to a new relation inconsistent with the subjection to the control and care of the parent. In such case the emancipated child is the head of a new family and as such is subject to obligations and duties to his wife and children which require him to be the master of himself, his time, his labor, earnings, and conduct.

We limit this discussion of the instructions to the exception taken by appellant. See *Horwath v. Washington Water Power Co.*, 68 Wn.2d 835, 416 P.2d 92 (1966); *Burlingham-Meeker Co. v. Thomas*, 58 Wn.2d 79, 360 P.2d 1033 (1961); *Klise v. Seattle*, 52 Wn.2d 412, 325 P.2d 888 (1958).

■ Tested by the exception taken, the instructions given were not erroneous. A married minor, 18 years of age, who has successfully completed high school and is the head of his own family, who earns his own living and maintains his own home, is emancipated for the purpose of giving a valid consent to surgery if a full disclosure of the ramifications, implications and probable consequences of the surgery has been made by the doctor in terms which are fully comprehensible to the minor. Thus, age, intelligence, maturity, training, experience, economic independence or lack thereof, general conduct as an adult and freedom from the control of parents are all factors to be considered in such a case.

Appellant was married, independent of parental control and financial support and it was for the jury to decide if he was sufficiently intelligent, educated and knowledgeable to make a legally binding decision. As we stated in *Grannum v. Berard,* 70 Wn.2d 304, 307, 422 P.2d 812 (1967): "The mental capacity necessary to consent to a surgical operation is a question of fact to be determined from the circumstances of each individual case."

The jury was correctly instructed as to the factors to be weighed in determining appellant's capacity to consent to the operation.

The judgment is affirmed.

FINLEY, C. J., HILL, WEAVER, and ROSELLINI, JJ., concur.