[Civ. No. 12027. Third Dist. July 11, 1969.]

OSCAR JESSIN et al., Plaintiffs and Respondents, v. COUNTY OF SHASTA et al., Defendants and Appellants.

Robert A. Rehberg, County Counsel, for Defendant and Appellant.

Jerey E. Hurley, Jr., for Plaintiffs and Respondents.

Paul N. Halvonik, Greenbaum, Wolff & Ernst, Harriel F. Pilpel, Nancy F. Wechsler, Barbara Joan Marks and Philip K. Jensen as Amici Curiae on behalf of Plaintiffs and Respondents.

Hassard, Bonnington, Rogers & Huber, Howard Hassard and David E. Willett as Amici Curiae.

REGAN, J.—This is an appeal from a judgment declaring voluntary nontherapeutic surgical sterilization to be legal in this state, and authorizing defendant County of Shasta to perform such operations upon willing qualified medical indigents, as are the plaintiffs herein.

By their complaint for declaratory relief, plaintiffs, husband and wife and residents of Shasta County, allege they are unable to provide medical care and health services for themselves and are eligible to receive such services from Shasta General Hospital and the Shasta County Public Health Department. They contend that as they are already the parents of as many minor children as they can adequately care for and support, Shasta County is required by law to furnish them with surgical sterilizations which they have requested and which Shasta Courty has refused to furnish on the stated belief that the rendering of such services would be unlawful.

Defendant county by its answer alleges the performance of nontherapeutic surgical sterilization to be unlawful; it admits that tubal ligation (in the female) and vasectomy (in the male) are appropriate services in the field of family planning as described in section 1276, subdivision (k), of title 17 of the California Administrative Code[1] in order that plaintiffs'

[1] "(k) Appropriate services in the field of family planning, which may include:
　　(1) Promotion of availability of program elements such as:
　　　(A) Assembling knowledge about family planning, attitudes, values, and information held by population groups.
　　　(B) Public and professional education services about the health

family will not become public charges at the expense of those public resources set aside for the public welfare as described in section 1445 of the Health and Safety Code;[2] that tubal ligation and vasectomy are readily available within Shasta County to those citizens of Shasta County who are financially able to provide medical care and health services for themselves through physicians and surgeons in the private practice of medicine; and that an actual controversy has arisen and exists between plaintiffs and defendants, and each of them, in that plaintiffs claim that they and other qualified citizens of Shasta County are entitled by law to the aforesaid health services and defendants have failed and refused to furnish said services, claiming the rendering of said services would be unlawful.

Also, by their complaint plaintiffs contend that defendants are required by law to furnish them with the requested professional services for fertility control as appropriate services which section 1276, subdivision (k), of title 17 of the California Administrative Code makes mandatory, and that the refusal of defendants to furnish said services by defendants to them and to other citizens of Shasta County similarly situated, when said services are readily available to other citizens of Shasta County who are financially able to employ physicians in private practice, is an arbitrary and unconstitutional discrimination against plaintiffs based on their financial circumstances, in violation of the concepts of due process and equal treatment guaranteed by the Constitutions of the State of California and the United States of America. Plain-

---

benefits of family planning and fertility control methods.

(C) Professional services for sterility correction, fertility control and genetic counseling for all segments of the population, making available methods acceptable to families of any religious persuasion.

(D) Evaluation of the adequacy of the community's family planning efforts.

(2) Provision of program elements which are not otherwise likely to be made available, including family planning services for those groups who cannot reasonably obtain them.''

[2]''1445: Under such limitations and restrictions as are prescribed by law, and in addition to jurisdiction and powers otherwise conferred, the boards of supervisors in each county may provide for the care and maintenance of the indigent sick or dependent poor of the county, and may provide medical and dental care and health services and supplies to persons in need thereof who are unable to provide the same for themselves, and for these purposes may levy the necessary taxes. Each county may, insofar as it is able to do so, provide the means to meet promptly and adequately the health needs of the indigent sick, the aged, and the poor, for the better prevention of serious illness and incapacity, to the end that such persons will not become public charges at the greater expense of those resources set aside for the public health and welfare.''

tiffs further contended that the refusal of defendants to render said services to other qualified persons within Shasta County results in said persons becoming public charges at the expense of public resources and results in an arbitrary, unnecessary and unreasonable expenditure of public funds, including tax moneys collected from plaintiffs. Defendant county failed to answer these latter allegations. Thus they are deemed to be admitted. As to these allegations no controversy exists.

The proceedings before the trial court were extremely brief. Plaintiffs called one witness, Dr. John D. Keye, mistakenly sued herein as the Director of the Public Health Department of Shasta County,[3] under section 776 of the Evidence Code, who testified he was familiar with section 1276 of the California Administrative Code and who then explained the surgical procedures involved in vasectomies and that such operations are available to nonindigents who are able to provide for their own medical and health needs through private physicians. This and no more.

On cross-examination by the county counsel for defendant Shasta County, Dr. Keye was asked if in his "view" these sterilization procedures came within the language of section 1445 of the Health and Safety Code. He answered in the affirmative. He further stated that on occasions prior to May of 1966 the defendant county provided such services, that probably "one or a few [were] done since then, but they had medical reasons, pure and simple." The witness then commented that people seeking the operations "are the ones who are asking for help in keeping the size of their family under control" and are persons who "can't follow directions on the devices and pills and other control methods."

Dr. Keye was also asked as follows:

"MR. HURLEY: Q. One more question, Doctor. In your professional opinion, would that type surgery meet this definition: 'A means to meet promptly and adequately the health need of the poor for the better prevention of serious illness and incapacity to the end that such persons will not become public charges at the greater expense of those resources set aside for the public health and welfare.'? A. I firmly believe so.

"THE COURT: You are reading from what? Administrative Code?

"MR. HURLEY: That was 1445 of the Health and Safety Code.

---

[3]One Ben B. Hurst, M.D., is the Director of the Public Health Department of the County of Shasta.

"The Court: Yes, of course, that's the section you referred to. Anything further?

"Mr. Rehberg: I have a brief statement, but other than that nothing.

"The Court: Thank you, very much, Doctor.

"Mr. Hurley: Thank you, Dr. Keye. The plaintiff rests."

No witness was offered for the defense and the cause was submitted for decision and judgment. Findings of fact and conclusions of law were expressly waived.

The judgment of the trial court is as follows:

"It Is Adjudged that voluntary non-therapeutic surgical sterilization operations are legal in the State of California; that voluntary non-therapeutic surgical sterilization operations when requested are health needs of the poor within the meaning of Section 1445 of the Health and Safety Code of the State of California; that voluntary non-therapeutic surgical sterilization operations when requested are basic and appropriate services in the field of family planning within the meaning of Section 1276 of the Administrative Code of the State of California; that it is the duty of Shasta County to perform such operations when requested by persons entitled to receive the public health services of Shasta County."

Appellants' brief, following a short statement of facts, advises this court as follows: "By this appeal, the County of Shasta does not challenge the trial Court's decision that it is required to perform these operations without charge, but is only concerned of [sic] the question of the legality of the operation itself.

"Issue Presented

"The sole issue on this appeal is the legality of all non-therapeutic surgical sterilization in this State upon persons for whom competent consent has been given.

"Argument

"Non-therapeutic Surgical Sterilization Must Be Considered by the County of Shasta to Be Illegal in This State.

"The County's position on the legality of the surgical procedure in question is based on the 1950 opinion of the Attorney General found at 15 Ops. Atty. Gen. 100 and upon the position heretofore taken by the legal counsel for the California Medical Association, to wit: the firm of Peart, Hassard,

Smith & Bonnington, Attorneys at Law, 3500 Wells Fargo Building, 44 Montgomery Street, San Francisco, California (CT 7).

"The County cannot now advise physicians at the County. Hospital that the performance of voluntary non-therapeutic surgical sterilization will not subject them to criminal prosecution when both the chief law enforcement officer of the State and the legal counsel to the physicians own statewide professional association have indicated otherwise. This is not to say that the County agrees with these authorities, but only that in light of the contrary decision in the trial court and the statewide importance of the question an appellate decision is necessary to declare the law in this matter." This and nothing more.

Respondents filed no brief.

The brief of California Medical Association as amicus curiae urges that this is an issue of great public importance in that no court in the United States has yet determined whether nontherapeutic sterilization is permissible in this state and concludes:

"The *Griswold*[4] decision would seem to declare the constitutional right of the individual to practice birth control. It is for this Court to determine whether California permits sterilization as a means to accomplish this end. California has no statute expressly prohibiting nontherapeutic sterilization. If such a procedure is unlawful, the illegality must stem from either the penal provision dealing with mayhem, or from public policy considerations. While dicta in the *Custodio*[5] case (*supra*) hints at an answer, the question is squarely presented here for the first time. The medical profession and the public at large will be keenly interested in the Court's decision."

The brief of The American Civil Liberties Union of Northern California as amicus curiae in support of respondents summarizes its argument as follows:

"Consensual vasectomy in California is not proscribed by law; a contrary rule would conflict with the Constitution of the United States," and that there is "no legislative policy, express or implied, proscribing consensual vasectomy. Nor would such a policy be constitutional."

The Association for Voluntary Sterilization, Inc., in its

---

[4]*Griswold* v. *Connecticut* (1965) 381 U.S. 479 [14 L.Ed.2d 510, 85 S.Ct. 1678].

[5]*Custodio* v. *Bauer* (1967) 251 Cal.App.2d 303, 317 [59 Cal.Rptr. 463].

brief as amicus curiae in urging that "voluntary steriliza-
tion, of either the husband or the wife, is one of the methods
of birth control which should be made available to those who
choose it under wise and prudent professional guidance,"
summarizes its argument thusly:

"Voluntary sterilization is a method of family planning
practiced and recognized as lawful throughout the nation and
the world. It has been recognized as lawful in California since
1941 and is readily available to persons able to provide for
their own medical and health needs. Voluntary sterilization is
a method of family planning, and thus reimbursable as a fam-
ily planning service for persons unable to provide such serv-
ices for themselves, under Section 1276(k) of the Administra-
tive Code of California and is within the health needs of such
persons, under Section 1445 of the Health and Safety Code of
California. The refusal of the Shasta General Hospital and
the Public Health Department of Shasta County to perform a
voluntary vasectomy or salpingectomy upon persons such as
respondents in the instant case, who are unable to afford such
services from private physicians, constitutes discrimination
against persons unable to afford such services, in violation of
rights of privacy, equal protection of the laws, and due proc-
ess of law guaranteed by the Fourteenth Amendment of the
Constitution of the United States."

### DECLARATORY RELIEF

Section 1060 of the Code of Civil Procedure provides, in
part: "Any person interested . . . who desires a declaration
of his rights . . . may, *in cases of actual controversy* relating
to the legal rights and duties of the respective parties, bring
an original action in the superior court . . . for a declaration
of his rights . . . . He may ask for a declaration of rights or
duties, either alone or with other relief; and the court may
make a binding declaration of such rights or duties, whether
or not further relief is or could be claimed at the time."
(Italics added.)

In *Wilson* v. *Transit Authority* (1962) 199 Cal.App.2d 716,
722-723 [19 Cal.Rptr. 59], this court, in commenting on the
function of declaratory relief actions, stated: "An essential
requirement of the procedure, however, is that there be *a real
controversy* (italics theirs) between parties, involving *justici-
able questions* relating to their rights and obligations. Facts
and not conclusions of law must be pleaded which show a
controversy of concrete actuality as opposed to one which is

merely academic or hypothetical. (*City of Alturas* v. *Gloster,* 16 Cal.2d 46 [104 P.2d 810] ; *American Mission Army, Inc.* v. *City of Lynwood,* 138 Cal.App.2d 817 [292 P.2d 533]) ; for, as has been aptly said a statute providing for a declaration of rights 'does not constitute a court a fountain of legal advice.' (*Washington-Detroit Theater Co.* v. *Moore,* 249 Mich. 673 [229 N.W. 618, 68 A.L.R. 105]; *City of Flint* v. *Consumers Power Co.,* 290 Mich. 305 [287 N.W. 475].)

"In Corpus Juris Secundum, Declaratory Judgments, section 30, page 107, the general rule is given as follows:

" '. . . [D].eclaratory relief will be awarded, only where there is a *justiciable controversy,* a declaratory judgment proceeding is not available to secure judicial answers to questions that are merely theoretical, hypothetical, academic, or abstract in the sense that they are not related to a particular object or thing. . . . A difference of opinion does not give rise to a justiciable case until an actual concrete controversy arises. . . .

" 'Declaratory judgment statutes do not authorize the courts to give advisory opinions.' " (Italics ours.) (See also, *Aetna Life Ins. Co.* v. *Haworth,* 300 U.S. 227 [81 L.Ed. 617, 57 S.Ct. 461, 108 A.L.R. 1000] ; *City of Alturas* v. *Gloster,* 16 Cal.2d 46, 48 [104 P.2d 810] ; *Ephraim* v. *Metropolitan Trust Co.,* 28 Cal.2d 824, 836 [172 P.2d 501].)

In this respect it should be noted that the last portion of the judgment (items 2 through 4) involves questions of great public importance having a profound bearing upon the scope of medical care under publicly sponsored welfare programs. There was no evidence as to that phase of the case before the trial court and the parties have not briefed that phase of the case either in the trial court or in this court (with the exception of one brief submitted by an amicus curiae). It represents an effort by counsel to secure an appellate adjudication upon important questions of law without the investigation and briefing incumbent upon them. Not only because of the practical absence of controversy but also because of the absence of investigation by the attorneys representing the parties, the trial court should have declined to express itself on the public welfare aspects of the so-called "controversy."

The pleadings reveal one controversy between the parties, involving a single justiciable question relating to their rights and obligations, namely: Is nontherapeutic sterilization lawful in the State of California?

 We answer this question in the affirmative. This being the sole justiciable question in controversy between the interested parties, we hold that the trial court, in rendering a judgment on other substantial questions on which no controversy exists and on which no proper consideration was given in the trial, committed an abuse of discretion.

## NONTHERAPEUTIC SURGICAL STERILIZATION

 Turning now to the question of the legality of nontherapeutic surgical sterilization, we note initially that this is a case of first impression for the courts of this state. The confusion in this area of the law stems from a 1950 opinion of the Attorney General. (15 Ops. Cal. Atty. Gen. 100.) The Department of Corrections had inquired as to whether it could authorize the performance of sterilization operations upon prison inmates in certain situations. The opinion concluded that the presently established policy of this state forbids the performance of a sterilization operation upon an inmate, either with or without his consent, unless it is clearly shown that the life of the patient is in grave danger and may be lost because of a failure to perform such operation (with three exceptions not applicable here). In his opinion the Attorney General stated (at p. 103): ''Thus, since the law forbids mayhem and criminal abortions and specifically declares it to be a felony for one to assist in the prevention of conception, we are of the opinion that non-therapeutic sterilization operations are contrary to the established policy of this state in that they are violative of the state's social interest in the maintenance of the birth rate.''

The trial court found this opinion to be ''archaic and illogical when written,'' and found that ''voluntary sterilization operations could not possibly be construed to constitute the crime of mayhem as defined in the Penal Code.'' (See Pen. Code, § 203; see also, Pen. Code, § 7.) We agree, as will presently be explained.

Although there appears to be no California case law on the precise question, there is one case which points the way. *Custodio* v. *Bauer, supra,* 251 Cal.App.2d 303, 317-318, was an action for alleged negligence in the performance of a therapeutic procedure. Thus, the following comments as to nontherapeutic sterilization constitute dicta, but nevertheless are of interest.

''It has been suggested that such an operation for the purpose of family limitation motivated solely by personal or socio-economic consideration is likewise not antithetical to public

policy. (*Shaheen* v. *Knight* (1957) 11 Pa.D. & C.2d 41, 43-44. . . .)

"In this state, policy considerations have not been raised in those cases dealing with sterilization which have been brought to the attention of this court. (In *Kritzer* v. *Citron, supra,* 101 Cal.App.2d 33, an action for alleged unauthorized sterilization of wife, the court found sufficient evidence to show actual consent. In *Wiley* v. *Wiley* (1943) 59 Cal.App.2d 840, 842 [139 P.2d 950], an action for annulment by husband was held not defeated because he submitted to sterilization on the representation of his wife that it was necessary to protect her health. In *Bathke* v. *Rahn, supra,* 46 Cal.App.2d 694, an action for failure of vasectomy, which resulted in impairment of the health of husband and failed to achieve the therapeutic purpose of preventing wife's pregnancy, was held barred by the statute of limitations.)

"Where not prohibited by statute, the matter would appear to be one of individual conscience. The question of whether the state can now control the subject may be questioned in view of the fact that the giving of information, instruction and medical advice to married persons as to the means of preventing conception is now clothed in a cloak of constitutional protection. (*Griswold* v. *Connecticut* (1965) 381 U.S. 479 [14 L.Ed.2d 510, 85 S.Ct. 1678].) "[6]

Only one case has been cited by counsel (and no other has been revealed through independent research)[7] which squarely meets the issue, and that is *Shaheen* v. *Knight, supra,* (1957) 11 Pa. D. & C. 2d 41. In *Shaheen,* the plaintiff husband engaged a physician to conduct an operation to make him sterile so that he could limit the size of his family in comfort and educate it. The court held that such a contract is not void by reason of public policy, stating (at p. 43) : "We are of the opinion that a contract to sterilize a man is not void as against public policy and public morals. It was so held in *Christensen* v. *Thornby,* 192 Minn. 123, 255 N.W. 620. Also, see 93 A.L.R. 570. It is argued, however, that in the *Christensen* case the operation was for a man whose wife could not have a child without hazard to her life, whereas in the instant

---

[6]It is generally recognized that a sterilization operation for therapeutic purposes is not against public policy. (*Custodio* v. *Bauer, supra,* 251 Cal. App.2d at p. 317; *Christensen* v. *Thornby* (1934) 192 Minn. 123 [255 N.W. 620, 93 A.L.R. 570].)

[7]Note, however, *Smith* v. *Seibly* (1967) 72 Wn.2d 16 [431 P.2d 719]. There, the Washington Supreme Court seemingly upheld the legality of vasectomy as a valid method of family planning in the case of a minor who was married and independent of parental control and support.

case claimant has contracted for sterilization because he cannot afford children.

"It is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community in declaring such policy void: *Mamlin* v. *Genoe,* 340 Pa. 320 [17 A.2d 407]. It has been said: 'There must be a positive, well-defined, universal public sentiment, deeply integrated in the customs and beliefs of the people and in their conviction of what is just and right and in the interests of the public weal.' "

Since the opinion of the Attorney General appears to be the stumbling block to voluntary nontherapeutic sterilizations, that opinion must be examined. This opinion advances the view that consensual vasectomies are illegal since they counter against a public policy of a high birthrate. The opinion also suggests that vasectomies may constitute mayhem. This latter suggestion is unacceptable for, as the trial court pointed out, a voluntary vasectomy is in no way done "maliciously." And as one court put it: "[A vasectomy] does not render the patient impotent or unable 'to fight for the king,' as was the case in mayhem or maiming." (*Christensen* v. *Thornby,* 192 Minn. 123 [255 N.W. 620, 622, 93 A.L.R. 570].)

We therefore reject the Attorney General's suggestion that a vasectomy may constitute mayhem.

Turning to the public policy argument, the Attorney General found the public policy to be expressed in three different statutory schemes:

1. *Antiabortion laws.* This is a questionable analogy, since the antiabortion laws deal with a situation where, as some commentators maintain, a human life has already been conceived, no matter the duration of the pregnancy. The Attorney General makes no effort to explain the relationship. Moreover, sections 274-276 of the Penal Code, relating to abortion, have been extensively amended and liberalized since the expression of the Attorney General in 1950. (See Health & Saf. Code, § 25950 et seq. [Therapeutic Abortion Act].)

2. *Vasectomy laws.* The Attorney General seemed to find some support in the laws authorizing involuntary vasectomy (Pen. Code, §§ 645 and 2670) and sterilization of the feeble-minded.( Welf. & Inst. Code, § 6624.) But as to how these statutes show a public policy against consensual vasectomy is not shown.

748

3. *Antidissemination of contraceptive information laws.* The Attorney General relied heavily upon section 601 of the Business and Professions Code, which provides that anyone who offers his services to assist or facilitate a miscarriage or abortion *or for the prevention of conception, is guilty of a felony.* (Italics supplied by Attorney General.) He therefore concluded that nontherapeutic birth control is contrary to the policy of this state. Section 601 of the Business and Professions Code, however, was amended in 1965 to provide: "It shall not, however, be unlawful for information about the prevention of conception to be disseminated for purposes of public health education by any person who is not commercially interested, directly or indirectly, in the sale of any medicine or means which may be used for the prevention of conception."

As can be seen from the above, there is no real legislative policy proscribing consensual vasectomy, and the analogies contained in the Attorney General's 1950 opinion break down, for one reason or another, when subjected to scrutiny in 1969.

This then brings us to the case of *Griswold* v. *Connecticut* (1965) *supra,* 381 U.S. 479. In *Griswold,* the United States Supreme Court considered the constitutionality of a state law prohibiting the use of contraceptives or counseling or aiding in the use thereof. The situation before this court involves no statutory prohibition, for we find that the mayhem laws are not applicable. Nevertheless, the holding of the court that the statute was invalid as an unconstitutional invasion of the right of privacy of married persons seems to declare the individual's right to practice voluntary birth control.

However, we do not now need to decide the applicability of *Griswold* to the instant case, for we conclude that there is no legislative policy or any other overriding public policy proscribing consensual vasectomy in this state. Nor does there appear to be any other good legal reason why such a voluntary operation, given competent consent, should not be performed. In fact, the few cases in this area indicate that it is an acceptable method of family planning, while *Griswold* indicates that it may fall within constitutional protection. We adopt the ruling of the *Shaheen* case and hold that California has no public policy prohibiting consensual sterilization operations, and further hold that nontherapeutic surgical sterilization operations are legal in this state where competent consent has been given. There being no other real controversy

between the parties, the judgment is modified by inserting a period following the clause: ''IT IS ADJUDGED that voluntary non-therapeutic surgical sterilization operations are legal in the State of California.'' The remainder of the declaratory portion of the judgment is deleted and, as so modified, the judgment is affirmed.

Friedman, Acting P. J., and Janes, J., concurred.