[No. 29898. *En Banc.* November 8, 1946.]

C. VERNE TOMLINSON, *Respondent*, v. ROY N. BEAN *et al.,* *Appellants.*[1]

*J. D. McCallum,* for appellants.

*Clyde H. Belknap,* for respondent.

[1] Reported in 173 P. (2d) 972.

STEINERT, J.—Plaintiff, a real estate broker, brought suit against the defendants to recover a commission alleged to have been earned by him for negotiating a sale of certain farm land and personal property thereon, of which the defendants were the owners. Defendants answered, setting up a general denial, an affirmative defense, and a cross-complaint bringing into the action, as cross-defendants, the contracting purchasers of the property, whereupon the purchasers countered with a cross-complaint against the defendants. Both of these cross-complaints were afterwards dismissed, and the main action was ultimately determined upon the original complaint and the answer thereto. The cause was tried before the court, without a jury, and judgment was entered for the plaintiff. Defendants appealed, assigning as errors the rejection by the trial court of certain offers of proof presented by the defendants and the consequent findings of fact, conclusions of law, and judgment made and entered by the court.

At the time of the transaction hereinafter related, appellants, Roy Bean and Avness Bean, his wife, were the owners and operators of a farm consisting of six hundred forty acres of tillable land, and some pasture, together with the personal property thereon, located in Lincoln county, Washington. In connection with the operation of their own farm they also were, and for many years had been, farming fifteen hundred acres adjacent thereto, under yearly oral leases from the owners thereof, who will hereinafter be referred to as the lessors.

The contract of employment upon which respondent, C. Verne Tomlinson, recovered judgment in the superior court was incorporated in a detailed written contract of sale entered into on August 4, 1943, by and between the appellants, as sellers, and the cross-defendants E. C. Loeber, Loren H. Loeber, Paul Loeber, and Lena Loeber, as purchasers. The stated price consideration for the sale was $105,000.

As recited in respondent's complaint, the contract of sale contained a provision which read:

"Parties of the first part [appellants] as part of the con-

sideration of this contract, have agreed to pay C. Verne Tomlinson the sum of $3875.00 as broker's commission for negotiating this transaction and obtaining the signature of second party [the Loebers] to this contract. In the event that said contract shall not be completed due to the default of second party, said second party shall be responsible to first parties for the amount of said commission to said C. Verne Tomlinson."

The contract of sale described the real and personal property to be transferred, and added:

"In addition to the foregoing, and as a part of the consideration hereof, first parties will surrender to second party all rights they may have under oral leases upon the following land situate in Lincoln County, State of Washington, to-wit: [Here follows a description of the adjacent lands owned by the lessors.]."

In their amended answer, appellants admitted signing the contract but alleged that,

". . . as a part of the consideration, and as one of the conditions, for the signing of same, that the consent of the owners of the leased land described in said contract was to be secured beyond the period that these answering defendants held the same, and it was agreed by plaintiff [respondent], the defendants [appellants], and cross-defendants [the Loebers] to said written contract that the said contract should not have any force or effect if the consent of the owners of said leased land was not secured for the cross-defendants to continue farming it."

Concededly, however, no provision such as the one last quoted was contained or suggested in the written contract.

Appellants further alleged in their amended answer that, after the contract was signed, the lessors refused to grant to the Loebers the right to continue farming the adjacent lands after the expiration of the existing oral leases to the appellants, and that, for this reason, the Loebers refused to carry out the contract with the appellants.

As an affirmative defense, appellants alleged in their amended answer that the Loebers were possessed of extensive farming machinery and equipment; that, had the Loebers purchased from the appellants the personal property described in the contract, they would have had more

farming equipment than they could use if the lessors should refuse, as they did, to give their consent to the Loebers' farming the adjacent lands owned by the lessors; and that

" . . . defendants [appellants] and the cross-defendants [the Loebers], relying upon and believing, and it being a material part of the consideration for said contract, that the said leased land could be obtained for the cross-defendants, neither the defendants, nor the cross-defendants would otherwise have signed said contract."

At the trial, the respondent took the witness stand, identified the written contract of August 4, 1943, admitted receiving five hundred dollars from E. C. Loeber as a down payment for the purchase of appellants' property, denied receiving any further payment as for his broker's commission, and offered no further evidence.

On cross-examination of respondent, appellants' counsel sought to elicit certain details of the negotiations leading to the formation of this contract, whereupon respondent's counsel interposed an objection, reciting as grounds therefor, that

" . . . the contract is the best evidence as to what the consideration was for that transaction and it is also the best evidence as to what any commission was. And you can't vary the terms of the contract by parol evidence."

The trial court sustained the objection, and appellants thereupon made an extended offer of proof, which presents the crucial matter in this case. Appellants' counsel offered to prove, first by respondent on cross-examination, the details of the various negotiations culminating in the written agreement. Since the offer consumes seven pages of the statement of facts, we shall not set all of it out *verbatim* here. The essence of it appears to be that, under the circumstances connected with the transaction, all of the parties understood that the consummation of the sale of appellants' land and farm equipment to the Loebers depended upon the lessors' consent that the Loebers might continue to farm the adjacent lands under the same kind of arrangement and agreement as that under which appellants were farming them.

At one point the offer recited:

"This listing and the agreement between Mr. Bean and Mr. Tomlinson was that the leased lands were to go in with this sale and form a part of the consideration for the sale."

At another point, counsel offered to prove by respondent that he and one of the cross-defendants Loeber drove around the borders of the leased land

". . . for the reason that the leased land was a part of the consideration and was to go into this sale, and that there would be no sale of these lands and that his purchaser would not take the other property unless it could be accomplished that these leases would go with it."

The offer further recited that it was represented,

". . . particularly by Mr. Tomlinson, that these leased lands were a very material part of this deal and would go in with the sale,"

and that "the leased lands *went with the deal.*" (Italics ours.)

It is not clear what counsel meant by his statements that the leased land "was to go into the sale," and "the leased lands went with the deal." He of course did not mean, and could not have meant, that the land which was the subject of the sale under the written contract included the land which appellants were farming under oral leases. As shown above, the contract itself in terms merely provided that appellants should *surrender* to cross-defendants all rights that appellants may have had under those leases. It should be stated here that no contention is made in this case that appellants could not *assign* the oral leases for the length of time they then had to run.

To illustrate the indefiniteness and uncertainty of appellants' offer, considered in its entirety, we quote further therefrom. At one point the offer states:

"We offer to show by this witness [respondent] in cross-examination that it was not the intention of any of these parties that this contract was to be delivered or to be of any force or effect whatsoever between any of the parties unless these *assignments of leases* could be procured from the landlords to the leased lands." (Italics ours.)

At another point, the offer recites:

"And to further show that the same night that the contract was signed the Beans and Mr. Tomlinson went direct from Connell to Spokane to see Mrs. Lindahl [one of the lessors] about *the assignment* of her lease and *accepting the Loebers as her tenants."* (Italics ours.)

However, at another point in the offer there is a statement that respondent and appellants were advised by respondent's attorney ". . . that these leases could not be *extended* without the consent of the landlords," (Italics ours.) and, at the conclusion of his offer, counsel stated:

"And I offer to show by him [respondent] that the consent of the landlords was not obtained, and that there was a failure and a lack of *consideration* for the contract, and that *the Loebers should at least have the leased lands for another crop year."* (Italics ours.)

As will be observed, this last-quoted offer implies that it was understood that there should be an *extension* of the oral leases by the lessors in favor of the cross-defendants for an additional period of *at least one year.* In neither the written contract of sale nor in the pleadings of appellants is there mention of any such specific extension.

After the cross-examination of respondent had been completed, appellant Roy N. Bean was called to the witness stand. His attorney started to question him about certain details of the transaction, but was stopped by the trial judge upon respondent's objection that the only object of such testimony could be to vary or add to the terms of an unambiguous written agreement. Thereupon the identical matter offered to be proved upon cross-examination of the respondent was offered to be proved by Mr. Bean. In addition, other similar matter was offered. In concluding his offer, appellants' counsel stated that:

"The contract was not considered as delivered and to be of no force and effect,—would not be binding on any of the parties or be any promise of any kind whatsoever unless this sale were finally consummated by the procuring of the *assignment* of the leases." (Italics ours.)

Finally, a similar offer was made on the part of Mrs. Bean, and, like the preceding offers, it was refused by the court.

It should be noted here that appellants made their extended offers of proof without any argument by way of explanation or clarification of its terms, or by way of advising the court of the theory under which the offered evidence was thought to be admissible.

The question presented to us by this appeal is whether it can be said, as a matter of law, that the trial court improperly excluded the offered testimony.

If the offered evidence should have been admitted, it may for the purpose of argument be conceded that the trial court committed reversible error. One reason for this is that an offer of proof made in good faith must, on appeal, be taken at its face value. As stated in *Scotland County v. Hill,* 112 U. S. 183, 28 L. Ed. 692, 5 S. Ct. 93, ". . . an appellate court must assume that the proof could have been made, and govern itself accordingly."

Another reason is this: Had the offers been granted and the proof as offered been admitted, it would have presented a close question whether such evidence, taken as a whole, violated the parol evidence rule, or whether, on the contrary, it came within the well-recognized exception thereto which would permit evidence to be introduced to show that a writing, although signed by the parties, never became effective as a binding contract because some condition precedent, orally agreed upon by the parties, had not occurred or had not been performed. *Mapes v. Santa Cruz Fruit Packing Corp., ante* p. 145, 173 P. (2d) 182.

The difficulty here is that appellants, in their voluminous offers of proof, failed not only to make plain what the oral agreement was, but also to segregate such evidence as might have been material and competent from that which would have been irrelevant, incompetent, and inconsistent therewith.

If appellants in their offers were referring to an agreement by them to *assign* to the Loebers appellants' rights under the oral leases, then the trial court could rightly have

assumed that they were merely endeavoring to prove something that had already been established by proof of the contract itself, namely that appellants were to surrender to the purchasers of the land all their rights to the leases. There is no disagreement on that provision in the contract.

If, on the other hand, appellants had reference to a *promise* made by themselves *to secure extensions* of the leases for the benefit of the Loebers, as additional *consideration*—a promise referred to in respondent's reply—then the trial court could rightly have decided that appellants were speaking of something inconsistent with the terms of the written instrument. This impression is strengthened by appellants' repeated reference to "consideration."

Finally, if appellants in their offers of proof were intending to assert that it was agreed between the parties that the contract was not to become effective except on the *condition* that the lessors should consent to *extensions* of the leases, then the trial court was entitled to have an exact statement of such an understanding and to be advised that appellants were seeking to introduce such evidence as an exception to the parol evidence rule, so that the court might have the opportunity of ruling separately on that specific question.

 The principle upon which we decide this case is that it is the duty of a party to make clear to the trial court what it is that he offers in proof, and the reason why he deems the offer admissible over the objections of his opponent, so that the court may make an informed ruling. If the party fails to so aid the trial court, then the appellate court will not make assumptions in favor of the rejected offer. *State v. Williams*, 12 Wn. (2d) 16, 120 P. (2d) 502; *Booth-Kelly Lbr. Co. v. Williams*, 95 Ore. 476, 188 Pac. 213. See, also, 6 Jones, Commentaries on Evidence (2d ed.), § 2526; 26 R. C. L. 1032, Trial, § 35.

"If an offer is fairly open to two constructions, a party has no right to insist, in a court of review, upon that construction which is most favorable to him, unless it appear that it was so understood by the court which rejected the evidence. An offer will be construed against the party

making it where it is contradictory, or in the alternative." 64 C. J. 130, Trial, § 148.

"When an offer of evidence is mixed up with matters clearly incompetent the trial court is not required to sort out the competent from the incompetent, but it can reject the whole offer." *Lynch v. Missouri-Kansas-Texas R. Co.,* 333 Mo. 89, 61 S. W. (2d) 918.

"The court was not required to cast about for reasons for which the evidence was offered." *Hatcher v. Lammons,* 215 Ala. 548, 112 So. 120.

This rule, as thus variously expressed, accords with critical thought upon the subject. See Model Code of Evidence (American Law Institute, 1942), Rule 7.

▮ Our conclusion is that the trial judge was justified in believing, from the offers of proof as they were presented to him, that appellants were seeking to vary the terms of the written contract, or that the offered evidence was irrelevant. We are unable to say, as a matter of law, that the court erred in excluding the testimony which was offered and rejected.

In the absence of the proffered testimony, there was no evidence to support appellant's alleged defense.

The judgment of the trial court is therefore affirmed.

MILLARD, C. J., ROBINSON, SIMPSON, JEFFERS, MALLERY, CONNELLY, and SCHWELLENBACH, JJ., concur.