[No. 21549-3-I.   Division One.   October 24, 1988.]

LESTER ALLEN STURGEON, ET AL, *Respondents*, v. CELOTEX CORPORATION, ET AL, *Appellants*.

Thomas C. Sorenson, Kent T. van den Berg, and Gibson, Dunn & Crutcher, for appellants.

Theodore R. Willhite and Levinson, Friedman, Vhugen, Duggan, Bland & Horowitz, for respondents.

SCHOLFIELD, C.J.—The Keene Corporation, Pittsburgh–Corning, and the Celotex Corporation (hereinafter Celotex), all manufacturers of asbestos–containing insulation products, appeal a money judgment on behalf of Lester Sturgeon and his wife, Norma Sturgeon, in the amounts of $395,000 and $205,000, respectively. We affirm.

## FACTS

Lester Sturgeon, age 52 at the time of trial, was an asbestos insulation worker and remained so employed at the time of trial. The Sturgeons initiated this lawsuit against numerous manufacturers of asbestos insulation products, claiming that Lester had contracted asbestosis and that the defendants had negligently failed to warn Lester of the dangers of working with their products. Sturgeon claimed that he was severely disabled as a result of his exposure to asbestos and suffered mental and physical anguish. Norma Sturgeon further alleged that as a result of

the defendants' negligence, the Sturgeons' marital relationship was damaged and that she was deprived of the normal support, services, and society of her husband.

In a pretrial motion, Celotex moved to exclude any evidence of Sturgeon's fear of cancer, arguing that Sturgeon lacked any objective symptoms of his fear. The trial court denied the defendants' motion. Celotex does not assign error to the denial of this motion.

At the beginning of trial, Sturgeon sought to prevent Celotex from calling Dr. Jeffrey Cary, a physician. Sturgeon had consulted Dr. Cary, and defense counsel had subsequently deposed the doctor. Sturgeon argued that Dr. Cary was referred by counsel solely for a forensic consultation, and his testimony was therefore protected under CR 26(b)(4)(B). Celotex argued that any privilege was waived when it was permitted to depose the doctor, that Sturgeon indicated in his deposition that he considered Dr. Cary to be his treating physician and that when additional testing was requested by the defense, Sturgeon insisted that it be done by Dr. Cary. The trial court granted Sturgeon's motion in limine. The next day, Celotex argued further that Sturgeon's 105–day notice listed Dr. Cary as a plaintiff's witness and described him as a treating physician. The trial court did not change its ruling.

Celotex moved in limine to exclude Sturgeon's testimony concerning his knowledge of co–workers who had allegedly died of cancer. Celotex argued that Sturgeon was not competent to testify as to the cause of a co–worker's death, nor to testify to any causal relationship between asbestosis and cancer, and that such testimony was hearsay. Sturgeon argued that because the evidence regarding Sturgeon's fear of cancer had been ruled admissible, this evidence was admissible to show the source and basis of his fear. The trial court denied Celotex's motion without explanation.

In a pretrial set of interrogatories directed to Sturgeon,

interrogatory 24 was directed to discovering persons who had relevant knowledge. Sturgeon answered the interrogatory, listing approximately 150 persons and placed an asterisk by 62 of the names with the notation, "an asterisk denotes those who I believe may be deceased."

Sturgeon's response to interrogatory 24 was made up into exhibit 41 and was offered and admitted without objection during Sturgeon's direct trial testimony.

Sturgeon was then questioned about each man listed as deceased, and he testified that most of the deceased persons had died of lung–related causes. Sturgeon also testified that the future for him did not look good in light of this evidence. Celotex did not renew its objection to any of this testimony.

According to Celotex's reply brief, it sought a limiting instruction in chambers relative to Sturgeon's testimony about deceased persons, but the request was denied. The motion was never placed on the trial record, but as proof that it was made, the reply brief cites the trial judge's comments during a hearing on posttrial motions to the effect that the court's failure to give a limiting instruction was not fatal because defense counsel had an opportunity to correct any improper inferences by cross examination.

Sturgeon called Charles Downey, his supervisor, as a witness. Sturgeon offered to show through Downey that a number of people in his crew had died, and that Sturgeon was one of the few survivors. Celotex objected on grounds of relevance and argued that the only purpose of such testimony was to create an inference that the individuals died from asbestos exposure. Sturgeon argued that his reasons for seeking to admit the testimony was to show the reason so many witnesses were unavailable to testify. The trial court ruled Downey's testimony admissible, despite assurances on the record by counsel for Celotex that he would make no argument with respect to witnesses who were not called. Sturgeon's counsel then proceeded through the list generated in the interrogatory answer, asking Downey

about many of the deceased members. Downey testified they were all "unavailable".

Celotex called as an expert witness Dr. Dorsett Smith, who, having examined Sturgeon, determined that he did not have asbestosis, but rather, was in the early stages of heart disease. The doctor acknowledged that Sturgeon's x–rays did indicate a certain level of exposure to asbestos, but not asbestosis. In the course of relating his findings, Dr. Smith changed two of the calculations in his written report, claiming that they were incorrect.

On cross examination, Dr. Smith was questioned about his involvement in asbestos litigation. He acknowledged that he had testified at the request of asbestos companies on a number of occasions, that a substantial portion of his income in recent years was generated from litigation, and that in approximately 20 cases specified by Sturgeon's counsel, he had determined that the plaintiffs, all of whom were asbestos workers, did not have asbestosis.

On redirect, Celotex attempted to elicit from Dr. Smith the result in at least one of those cases. Sturgeon's objection to the question was sustained by the trial court for lack of relevance. Celotex later made an offer of proof that the result in the one case was a defense verdict. The trial court noted the offer of proof, but did not change its ruling.

Celotex objected to the recalling of Dr. Philip Narodick as a rebuttal witness, arguing that the doctor's testimony would merely be a repeat of his previous testimony. Sturgeon argued that Dr. Narodick's testimony was necessary to counter Dr. Smith's testimony, especially because Dr. Smith changed his report during his testimony. The trial court permitted the rebuttal testimony.

Celotex's counsel objected to a portion of the court's instruction 8. The language objected to read as follows:

A product is not reasonably safe if it is unsafe to an extent beyond that which would be contemplated by an ordinary user.

Celotex proposed alternative language as follows:

In considering whether or not a product is not reasonably safe, you may consider whether the product is unsafe to an extent beyond that which would be contemplated by an ordinary user.

Further discussion on the instruction was apparently had off the record. At the end of trial, Celotex objected to the trial court's failure to give its proposed instruction.

After entry of a verdict favorable to the Sturgeons, Celotex made a motion for a judgment n.o.v. or, in the alternative, for a new trial and/or remittitur based on improper admission of evidence and the inadequacy of proof of damages. These motions were all denied.

INSTRUCTION 8[1]

Prior to the tort and product liability reform act of 1981, the concept of strict liability was applicable, regardless of whether the theory of recovery was manufacturer's defect, design defect, or inadequate warnings. *Seattle–First Nat'l Bank v. Tabert,* 86 Wn.2d 145, 149–50, 542 P.2d 774 (1975); Talmadge, *Washington's Product Liability Act,* 5 U. Puget Sound L. Rev. 1, 8 n.41 (1981).

The case before us was tried solely on a failure to warn. Currently, RCW 7.72.030 adopts a negligence standard in

---

[1] Instruction 8 states as follows:

"A product manufacturer is subject to liability to a claimant if the claimant's harm was proximately caused by the negligence of the manufacturer in that the product was not reasonably safe because adequate warnings or instructions were not provided.

"A product is not reasonably safe because adequate warnings or instructions were not provided with the product, if, at the time of manufacture, the likelihood that the product would cause injury or damage similar to that claimed by plaintiff, and the seriousness of such injury or damage, rendered the warnings or instructions, if any, of the manufacturer inadequate, and the manufacturer could have provided adequate warnings or instructions.

"A product is not reasonably safe because adequate warnings or instructions were not provided after the product was manufactured, where a manufacturer learned, or where a reasonably prudent manufacturer should have learned, about a danger connected with the product after it was manufactured, and failed to exercise ordinary care to issue warnings or instructions, and to inform product users concerning the danger.

"A product is not reasonably safe if it is unsafe to an extent beyond that which would be contemplated by an ordinary user."

failure to adequately warn cases. *Couch v. Mine Safety Appliances Co.*, 107 Wn.2d 232, 239 n.5, 728 P.2d 585 (1986). RCW 7.72.030(1) provides as follows:

(1) A product manufacturer is subject to liability to a claimant if the claimant's harm was proximately caused by the negligence of the manufacturer in that the product was not reasonably safe as designed or not reasonably safe because adequate warnings or instructions were not provided.

Instruction 8, in its first two paragraphs, follows the statutory language of RCW 7.72.030 closely. The claim of error relates only to the last paragraph, which was changed from the statutory language to state a test for liability in terms of strict liability instead of negligence.

Celotex, responding to an invitation by the court to submit a proposed substitute for the last paragraph of instruction 8, proposed a paragraph accurately stating the substance of the provisions of RCW 7.72.030(3).[2]

The trial court declined to give the proposed substitute for the last paragraph of instruction 8 on the ground that the instruction as given implicitly required the jury to consider whether the product was unsafe beyond the contemplation of an ordinary user.

The trial court's reasoning does not meet the objection of Celotex, which is that the last paragraph of instruction 8, standing alone, would permit a verdict for the plaintiffs on the sole ground that the product was unsafe to an extent beyond that which would be contemplated by the ordinary consumer.

The test for sufficiency of instructions is whether the instructions, read as a whole, allow counsel to argue their theory of the case, are not misleading, and properly inform the trier of fact of the applicable law. *Gammon v. Clark Equip. Co.*, 104 Wn.2d 613, 617, 707 P.2d 685 (1985).

---

[2]RCW 7.72.030(3) reads as follows:

"In determining whether a product was not reasonably safe under this section, the trier of fact shall consider whether the product was unsafe to an extent beyond that which would be contemplated by the ordinary consumer."

Instructions are prejudicial if they misstate the law in such a manner as to infringe upon a party's ability to argue his or her theory of the case. *Price v. Department of Labor & Indus.*, 101 Wn.2d 520, 682 P.2d 307 (1984).

The verdict for the plaintiffs reflects that the jury found the product not reasonably safe. The only issue raised by this assignment of error is the possibility the jury reached that result solely on the ground that the product was unsafe beyond the contemplation of an ordinary user.

The first paragraph of instruction 8 states clearly that liability is sought on the theory "that the product was not reasonably safe because adequate warnings or instructions were not provided." The overall tenor of instruction 8 emphasizes the requirement that the negligence must arise from a failure to give adequate warnings. It appears to us that so much evidence in this case dealt with plaintiffs' efforts to show inadequate warnings that no juror could overlook the importance of a finding that the warnings were inadequate in order to impose liability on the defendants.

There is no suggestion in the briefs of Celotex that plaintiffs' counsel at any time attempted to persuade the jury that a verdict could be rendered for the plaintiffs based upon the language of the third paragraph of instruction 8 standing alone. A review of the final arguments of Sturgeon's counsel reflects that the last paragraph of instruction 8 was never mentioned.[3]

We hold that the last paragraph of instruction 8 is erroneous because, standing alone, it states a test for strict liability, contrary to the clear language of the controlling statute. However, instructions must be read as a whole, and we are satisfied that the error in this instance was harmless because it is highly unlikely that it affected the outcome of the trial. *Thomas v. French*, 99 Wn.2d 95, 104, 659 P.2d 1097 (1983).

---

[3]We are not holding that failure to argue an erroneous instruction cures the error. In this case, the failure to argue the point supports our conclusion that the case simply was not tried on the language of the third paragraph of instruction 8.

DR. JEFFREY CARY

Celotex assigns as error the ruling of the trial court granting Sturgeon's motion in limine, barring Celotex from calling Dr. Jeffrey Cary as a defense witness. Sturgeon argued, and the trial court agreed, that Dr. Cary's testimony was privileged under CR 26(b)(4)(B), which reads as follows:

(B) A party may discover facts known or opinions held by an expert who is not expected to be called as a witness at trial, only as provided in rule 35(b) or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.

*Crenna v. Ford Motor Co.*, 12 Wn. App. 824, 828, 532 P.2d 290, *review denied*, 85 Wn.2d 1011 (1975) held that the privilege protecting from discovery facts known or opinions held by an expert not expected to be called at trial applied also to the trial of a case. Sturgeon did not call Dr. Cary as a witness, so the issue is whether Sturgeon waived the privilege with respect to Dr. Cary by describing him as his treating physician, permitting his deposition to be taken and listing Dr. Cary as a trial witness in his 105–day notice.

We need not address the waiver issue here because Celotex failed to preserve the alleged error for appeal by failing to make an adequate offer of proof as to what testimony would be elicited from Dr. Cary if he were permitted to testify.

■ In *Tomlinson v. Bean*, 26 Wn.2d 354, 361, 173 P.2d 972 (1946), the court stated the rule as follows:

[I]t is the duty of a party to make clear to the trial court what it is that he offers in proof, and the reason why he deems the offer admissible over the objections of his opponent, so that the court may make an informed ruling. If the party fails to so aid the trial court, then the appellate court will not make assumptions in favor of the rejected offer.

The *Tomlinson* case is cited with approval in the later case of *Smith v. Seibly*, 72 Wn.2d 16, 18, 431 P.2d 719 (1967).

Celotex asserted in oral argument before this court that during the discussion of this matter with the trial court, a copy of Dr. Cary's deposition was handed to the court. A copy of the deposition is not a part of the record. Furthermore, merely making a copy of a deposition available to the trial court falls far short of the requirement that the trial court be advised of the specific testimony to be offered and the reasons supporting its admissibility. An adequate offer of proof having not been made, this assignment of error is rejected.

## EVIDENCE OF DEATHS OF CO-WORKERS

Celotex next assigns error to admission of evidence of deaths of many of Sturgeon's former co-workers. Celotex argues that the evidence was irrelevant, immaterial, involved hearsay, raised collateral issues and should have been excluded as unfairly prejudicial under ER 403.[4] A motion in limine was made at the commencement of trial to exclude testimony by Sturgeon that many of his fellow workers had died of cancer. In arguing the motion, counsel for Celotex stressed Sturgeon's incompetence as a witness on cause of death and the relationship, if any, of the deaths of co-workers to exposure to asbestos.

Counsel for Sturgeon, in resisting the motion, argued that the evidence was admissible under ER 803(a)(3) to show Sturgeon's state of mind relating to his fear of developing cancer. The trial court had previously ruled that Sturgeon's fear of cancer was compensable. Sturgeon's counsel argued this evidence showed the basis of Sturgeon's fear of cancer.

ER 803(a)(3) provides that a statement of the declarant's existing state of mind is not excluded by the hearsay rule. However, ER 803 would appear to have no application here

---

[4]ER 403 provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

because Sturgeon was testifying in court, subject to cross examination, to his own state of mind. Rather, the hearsay rule would apply to bar Sturgeon from testifying to statements by others made out of court to him about the causes of deaths of co–workers. ER 803(a)(3) does not apply to out–of–court statements made by declarant or others to declarant showing the reason or basis for an admissible state of mind. Therefore, those statements remain subject to the hearsay rule. *United States v. Cohen*, 631 F.2d 1223 (5th Cir. 1980).

In *State v. Parr*, 93 Wn.2d 95, 104 n.1, 606 P.2d 263 (1980), in referring to ER 803(a)(3), the court stated:

> The rule permits statements reporting the declarant's state of mind, but does not permit statements reporting the conduct of another which might have induced that state of mind.

Sturgeon at no time made any showing that he had actual personal knowledge of the cause of the deaths or that anyone had ever told him the cause of the deaths. Sturgeon's testimony as to cause of death of co–workers was inadmissible. No foundation was laid to make the evidence admissible. He either had no personal knowledge on which to base the statements or he was relying on statements made to him out of court that were hearsay.

The only objection, however, was through a motion in limine, which was denied without comment. Celotex did not object during trial to Sturgeon's testimony that many of his former co–workers died of lung–related conditions or cancer. The failure to object as the evidence was presented raises the issue of whether the trial court's denial of Celotex's motion in limine was sufficient, standing alone, to preserve the error for appeal. If not, then the failure to object as the evidence was presented would operate as a waiver of the error.

The motion in limine was an oral motion made at the commencement of the trial prior to opening statements. It was not supported by a memo of authorities, and was very broad in scope:

Defendants respectfully move for an order in limine excluding all testimony along a line of evidence which was suggested by some things that Mr. Sturgeon said in his deposition. Specifically, Mr. Sturgeon stated something to the effect that all the people that he had worked with over the years who had worked with asbestos had died of cancer, with the implication that those two things are connected, namely, that they worked with asbestos and died of cancer, and also a statement by Mr. Sturgeon that cancer is the usual end result of asbestosis.

As stated, the scope of the motion was broad enough to apply to testimony by third persons, as well as by Sturgeon, relating to the identified subject matter.

Counsel then argued in support of the motion that Sturgeon was not competent to state opinions as to the cause of death and proximate cause. At the conclusion of the argument, the trial judge commented, "Well, just stating it rather briefly, defendant's motion in limine would be denied."

The trial judge could have denied this motion for a number of reasons. Trial courts regularly deny motions of this type because they are premature in that they come at a time when the court has heard no evidence and has no reliable basis for making a decision as to whether the evidence is admissible. In addition, the trial judge could have considered the motion too broad in scope and denied it on that ground. The judge also could have felt that in the exercise of sound discretion, he should not decide a motion that had not been briefed and made the subject of a memorandum of authorities by both parties. Nothing in the record gives us any information other than that the motion was denied.

Our rules do not provide for a motion in limine, but Washington courts have allowed such motions as early as 1937, when *State v. Smith,* 189 Wash. 422, 65 P.2d 1075 (1937) granted a new trial based upon violation by the prosecutor of an earlier court order requiring an offer of proof outside the presence of the jury before certain subject matter could be inquired into on cross examination. The

Supreme Court held the error was preserved, even though there was no objection or motion to strike at the time of the prosecutorial misconduct.

Our research leads us to no cases precisely on the point involved here. However, in *Fenimore v. Donald M. Drake Constr. Co.,* 87 Wn.2d 85, 549 P.2d 483 (1976), the trial court denied a motion to exclude certain evidence of negligence of the plaintiff's employer. In doing so, the trial judge advised counsel that the court preferred to rule on objections to relevancy at the time the particular evidence was presented, when the court would be in a better position to determine its relevance and admissibility. The trial court advised appellant's counsel to object as the evidence was offered.

The *Fenimore* court held that objections to the evidence when offered were necessary to preserve error because the trial judge advised counsel he was denying the motion to avoid ruling in advance of hearing evidence in the case, and that he should object when the evidence was offered.

The critical factors here are very similar to those in *Fenimore,* except the court here did not advise counsel as to why he was denying the motion or that objections should be made when the evidence was offered.

We also have case law in this state holding that motions in limine are tentative and advisory and are subject to change during trial. Thus, these cases suggest that objections should be made during trial to preserve error. *State v. Roth,* 30 Wn. App. 740, 747, 637 P.2d 1013 (1981), *review denied,* 97 Wn.2d 1013 (1982); *State v. Wilson,* 29 Wn. App. 895, 899 (1981). These cases were overruled on this point *sub silentio* by *State v. Koloske,* 100 Wn.2d 889, 676 P.2d 456 (1984).

*Koloske* involved motions in limine and preserving error with respect to ER 609 issues. In the process of reviewing the subject generally, the court made statements which we find possibly conflicting. At page 895, the opinion states:

The *Austin*[5] decision conflicts with opinions of this court which indicate that rulings on motions in limine are not *necessarily* tentative and advisory. *See, e.g., State v. Evans,* 96 Wn.2d 119, 634 P.2d 845, 649 P.2d 633 (1981). Unless the trial court indicates that further objections at trial are required when making its ruling, the party losing the pretrial motion is deemed to have a standing objection. *State v. Evans, supra; Fenimore v. Donald M. Drake Constr. Co.,* 87 Wn.2d 85, 549 P.2d 483 (1976).

Neither *State v. Evans,* 96 Wn.2d 1, 633 P.2d 83 (1981) nor *Fenimore* compel the conclusion that the party losing the pretrial motion is deemed to have a standing objection. In *Fenimore,* counsel were told the reason the ruling was being denied and were advised to make objections as the evidence was presented. In *Evans,* the court stated at page 124 that no further objection was necessary because the trial court had the motion under advisement and "the State had a continuing objection to this testimony until the judge ruled on its motion."

Thus, both *Fenimore* and *Evans* had particular circumstances which justified the requirement of further objections in *Fenimore* and excused any further objections in *Evans.*

In addition, the *Koloske* court also stated:

Another problem is raised when the trial judge issues a tentative or advisory ruling. If the trial court has made a definite, final ruling, on the record, the parties should be entitled to rely on that ruling without again raising objections during trial. When the trial court refuses to rule, or makes only a tentative ruling subject to evidence developed at trial, the parties are under a duty to raise the issue at the appropriate time with proper objections at trial. Further, the parties are entitled to insist on a ruling at that time and are obligated to insure that a record of the ruling is made for appeal purposes. Where appropriate, the record can be made outside the presence of the jury.

---

[5]*State v. Austin,* 34 Wn. App. 625, 662 P.2d 872 (1983).

*Koloske,* at 896. These statements strongly suggest that the party losing a pretrial motion will not in every case be deemed to have a standing objection.

■ We conclude that the circumstances surrounding the trial court's ruling on Celotex's motion in limine properly placed the court's ruling in the category of a tentative or advisory ruling. The court made no statement that would suggest that the court was making a final, definitive ruling upon which the parties could rely. The motion was so broad in scope and discussed the evidence to be excluded in such a general way as to implicitly suggest to the trial judge the likelihood of error if he tried to make a definitive, final ruling before hearing any of the testimony in the case. Thus, the circumstances make it likely that the trial judge was saying no more than that the motion in limine was being denied at that time.

We note again the statement in *Koloske,* at page 896:

> [T]he parties are under a duty to raise the issue at the appropriate time with proper objections at trial. Further, the parties are entitled to insist on a ruling at that time and are obligated to insure that a record of the ruling is made for appeal purposes.

When Celotex did not renew its objections at the time the objectionable evidence was offered, it failed to give the trial court an opportunity to correct the error at the time when it could and should have been corrected. Having failed to do so,. the error was not preserved for appeal, but was waived. Accordingly, this assignment of error must be rejected.

### LIMITING INSTRUCTION

Celotex contends the trial court erred in failing to give a limiting instruction advising the jury of the limited purpose for which evidence of the deaths of co–workers could be used.

When evidence is admitted for a limited purpose and the party against whom it is admitted requests an appropriately worded limiting instruction, the court is under a duty

to give the instruction. The rule is mandatory. *State v. Kontrath,* 61 Wn.2d 588, 591–92, 379 P.2d 359 (1963); ER 105; 5 K. Tegland, Wash. Prac. § 24, at 64 (1982).

█ In this record, however, there is no requested limiting instruction. Celotex asserts that the request was made in chambers and cites as support of that contention comments of the trial judge as to why he did not give a limiting instruction. Nowhere in the record is there even a suggestion as to the language contained in the missing instruction. Sturgeon contends no limiting instruction was ever requested. Under these circumstances, Celotex's contention is unreviewable.

Failure to request an appropriately worded limiting instruction waives the right to the instruction and fails to preserve the error for appeal. *Lockwood v. A C & S, Inc.,* 109 Wn.2d 235, 255, 744 P.2d 605 (1987); *State v. Oughton,* 26 Wn. App. 74, 81, 612 P.2d 812 (1980). The court did not err in failing to give an instruction limiting the jury's use of the evidence of the deaths of co–workers.

### CROSS EXAMINATION OF DR. SMITH

Dr. Dorsett Smith examined Sturgeon on behalf of defendants and testified that he did not have asbestosis, but rather, was in the early stages of heart disease. Cross examination of Dr. Smith brought out that he had testified on behalf of asbestos companies in approximately 20 cases, wherein he determined that the plaintiffs, all of whom were asbestos workers, did not have asbestosis. On redirect, Celotex attempted to prove that in at least one of those cases, the result was a defense verdict. The trial court sustained Sturgeon's objection to this evidence, and this ruling is assigned as error.

When a subject is opened up by a party on direct or cross examination, the other party may cross–examine or examine on redirect within the scope of the examination in which the subject matter was first introduced. *State v. Gefeller,* 76 Wn.2d 449, 458 P.2d 17 (1969). The *Gefeller* court noted that "[i]t would be a curious rule of evidence

which allowed one party to bring up a subject, drop it at a point where it might appear advantageous to him, and then bar the other party from all further inquiries about it." *Gefeller,* at 455. *See also Davis v. Globe Mach. Mfg. Co.,* 102 Wn.2d 68, 684 P.2d 692 (1984).

■ While the trial court's ruling sustaining the objection appears to have been erroneous, we find the error harmless. *Thomas v. French,* 99 Wn.2d 95, 104, 659 P.2d 1097 (1983) states the rule that "[e]rror will not be considered prejudicial unless it affects, or presumptively affects, the outcome of the trial."

The offer of proof here involved only one out of approximately 20 cases. Presumably, the theory of the rebuttal evidence was to provide the jury a basis for inferring that the jury in the one case agreed with Dr. Smith. The jury here may or may not have drawn that inference. There are many reasons why a jury in a given case might find in favor of a defendant asbestos company. It is extremely unlikely, in the face of the evidence supporting Sturgeon's claims, that advising the jury of a defense verdict in only one of the cases in which Dr. Smith testified would have influenced the outcome of the trial. The assignment of error, for these reasons, is rejected.

### IMPROPER CLOSING ARGUMENT

On the ground that there was no proof that any of the deaths of Sturgeon's co–workers was caused by asbestosis, Celotex objected to closing argument relating the deaths to asbestosis. Counsel for Sturgeon told the jury, after the objection was overruled, that the fact that so many of Sturgeon's co–workers were now deceased was evidence that asbestosis was not a rare disease.

■ In order to get the evidence of the deaths of co–workers before the jury, Sturgeon's counsel represented to the court that its only purpose was to show a basis or reason for Sturgeon's fear he was going to die of cancer. An instruction to the jury appropriately limiting the use of this evidence to that purpose, if requested, should have been

given. As previously decided in this opinion, however, by failing to make appropriate objections to the evidence when it was offered and by failing to request a limiting instruction, Celotex waived its right to have the court limit the use of the evidence, and the evidence was admitted without limitation as to use. An oral request during closing arguments that the court limit the use of the evidence came too late under the circumstances of this case.

Of course, Celotex was free to stress to the jury during its closing argument that there was no competent evidence that any co–worker's death was caused by asbestosis.

For the reasons stated, this assignment must be rejected.

### Rebuttal Evidence

■ Celotex assigns error to the ruling of the trial court allowing Dr. Narodick to testify on rebuttal. Celotex argues the testimony was merely a repetition of the doctor's previous testimony. Sturgeon argues the rebuttal testimony was made necessary by the fact Celotex's medical witness, Dr. Smith, changed two values in his report after Dr. Narodick had testified on direct. The trial court reviewed the matter in some detail before ruling and then commented:

> [T]he change in those numbers was significant enough to put the plaintiffs at a disadvantage with reference to the expert opinion heretofore given by Dr. Narodick about the cause. One says heart; the other says lungs. And I really think that it is an area where it should be broadened in scope sufficiently so that Dr. Narodick can focus on those numbers that were changed by Dr. Smith and say, "How then would that affect your opinion, Dr. Narodick," et cetera. So that's the ruling.

*State v. White,* 74 Wn.2d 386, 395, 444 P.2d 661 (1968) states:

> Ascertaining whether the rebuttal evidence is in reply to new matters established by the defense, however, is a difficult matter at times. Frequently true rebuttal evidence will, in some degree, overlap or coalesce with the evidence in chief. Therefore, the question of admissibility of evidence on rebuttal rests largely on the trial court's

discretion, and error in denying or allowing it can be predicated only upon a manifest abuse of that discretion.

Our review of the medical evidence involved in this assignment of error, in light of the nine areas of subject matter contained in Sturgeon's offer of proof with respect to Dr. Narodick's proposed rebuttal testimony, satisfies us that there was no abuse of discretion by the trial court in permitting Dr. Narodick's rebuttal testimony. This assignment of error is without merit.

### DENIAL OF POSTTRIAL RELIEF

Celotex's final assignment of error is based upon the denial of posttrial relief by the trial court. Celotex urges that we grant it a new trial based upon errors of law committed by the trial court and the cumulative effect of those errors. Celotex points out that no element of discretion is involved when a new trial is sought based upon errors of law, as contrasted to factual errors, relying upon *Johnson v. Howard*, 45 Wn.2d 433, 275 P.2d 736 (1953).

We have no quarrel with the rule as stated in *Johnson*. We must, however, decline the invitation to grant a new trial since each of Celotex's assignments of error has been found to be without merit in that either no error occurred, any error was waived, or the error was harmless.

Judgment affirmed.

GROSSE, J., and WILLIAMS, J. Pro Tem., concur.

Review by Supreme Court pending June 1, 1989.