IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| RYAN AND WAGES, LLC, a Washington limited liability company through its members, JULIA MCCORD and THE CONJUNCTIONAL PATRIOTIC SOVEREIGN PATHWAY, | ) ) ) ) ) ) | No. 68253-9-I<br><br>DIVISION ONE |
| Appellant/<br>Cross-Respondent, | ) ) ) ) | |
| v. | ) ) | |
| TOM WAGES, an individual, | ) ) | UNPUBLISHED OPINION |
| Respondent/<br>Cross-Appellant, | ) ) ) | FILED: March 18, 2013 |
| v. | ) ) | |
| REDDING LAKE STEVENS, LLC, an Oregon limited liability company, | ) ) ) | |
| Respondent. | ) ) | |

BECKER, J. — One cannot sue for breach under a contract that has a prevailing party attorney fee clause and then cry foul when held liable for an award of fees to a successful defendant. After Redding Lake Stevens LLC won dismissal from Ryan and Wages LLC's lawsuit for breach of contract, the court properly applied the equitable mutuality of remedies doctrine to award Redding

prevailing party fees under the contract. Finding no error in this decision, or in the decisions challenged by Tom Wages in his cross appeal, we affirm.

## FACTS

Tom Wages and Doris Ryan formed Ryan and Wages LLC (the company) in 2004. In December 2005, Ryan died and her interest in the company passed to her son and daughter, Floyd Ryan and Julia McCord. We will refer to Floyd Ryan and Julia McCord as "the heirs."

Around the same time, the company and an Oregon investment firm were forming Redding Lake Stevens LLC (Redding), a real estate venture to develop two assisted living facilities, one in Redding, California, and the other in Lake Stevens, Washington. The Redding project was built, but due to a problem of sewer access, it was not possible to build a facility on the Lake Stevens property.

The heirs filed a derivative shareholder action on behalf of the company, in which they sued Redding for breaching its own operating agreement. They also sued Tom Wages for misappropriating company funds and sought his removal as manager of the company. In May 2010, Wages counterclaimed for judicial dissolution of the company. The heirs did not oppose the dissolution request.

In December 2010, while the dissolution was pending, Redding paid the company $1.25 million. This money became the focal issue in the dissolution dispute between Wages and the heirs. Despite the pending dissolution, Wages argued the money should be distributed to the members as income according to

2

their ownership of the company. Such a distribution would have resulted in Wages receiving around $635,000.

The following year, in September 2011, the court granted Redding summary judgment dismissal from the heirs' shareholder action for breach of contract. The court awarded Redding $43,237.60 in attorney fees.

In December 2011, a two-day bench trial was held to resolve the dissolution and distribution of the company's assets. The company's operating agreement required that in a corporate dissolution, assets were to be distributed first to creditors, and next to members due a return of their initial capital contributions. The court heard testimony from Wages, from the heirs, and from the company's certified public accountant, Michael Cunningham, about the parties' contributions to and withdrawals from the company.

The testimony reflected that the company's only liquid assets were the $1.25 million held in an attorney trust account and a bank account containing about $2,000. Cunningham calculated that Wages had received more payouts from the company than he initially put in, so that Wages had a negative capital balance. Cunningham calculated the heirs' balance of unpaid returns on their initial contributions at over $3 million. According to Cunningham, the heirs' capital account balance was "much, much higher than the available cash to distribute" during the dissolution. The court entered findings of fact and conclusions of law, distributing the full $1.25 million to the heirs, reserving only enough to cover the company's last debts to third parties and the attorney fee

3

award to Redding.

The heirs appeal the attorney fee award to Redding. Wages appeals the distribution of the full $1.25 million to the heirs.

ATTORNEY FEES

The heirs sued Redding for breaching the Redding Lake Stevens LLC Operating Agreement. Their complaint included a request for attorney fees and costs. Paragraph 13.4 of the operating agreement authorized an award of reasonable attorney fees to the prevailing party in any suit "commenced to enforce or interpret any provision of this Agreement":

> ATTORNEYS' FEES: If any legal proceeding is commenced to enforce or interpret any provision of this Agreement, the prevailing party shall be entitled to recover reasonable attorneys' fees at trial and on any appeal (including but not limited to expert witness fees, transcript costs and other similar expenses), in addition to the costs and disbursements allowed by law.

After Redding won summary dismissal from the suit by persuading the court it was not a party to the operating agreement that created it, the court relied on paragraph 13.4 to award Redding more than $43,000 in attorney fees and costs. The heirs contend this award constituted legal error.

Whether a specific statute, contractual provision, or recognized ground in equity authorizes an award of attorney fees is a question of law reviewed de novo. Tradewell Group, Inc. v. Mavis, 71 Wn. App. 120, 126, 857 P.2d 1053 (1993).

We find no error in the fee award. The award was a straightforward

4

application of the equitable doctrine of mutuality of remedies. See generally Herzog Aluminum, Inc. v. Gen. Am. Window Corp., 39 Wn. App. 188, 692 P.2d 867 (1984). If the heirs had prevailed against Redding in their suit to enforce the Redding Operating Agreement, they would have been entitled to an award of fees from Redding under paragraph 13.4. Because Redding prevailed in the action instead, the mutuality doctrine permits it to claim the same entitlement. The mutuality of remedies doctrine authorizes contractual attorney fee awards even after the contract itself is ruled invalid or unenforceable. Kaintz v. PLG, Inc., 147 Wn. App. 782, 789, 197 P.3d 710 (2008).

The heirs argue the Kaintz holding is limited to cases where the parties to the litigation are also parties to the contract, and where the contract is ruled unenforceable as to *all* parties. But neither Kaintz nor the authorities it relies on impose any such limits on the rule. Here, the contract allowed an award of attorney fees to the "prevailing party." This standard terminology means the prevailing party in the litigation. It is not a limitation to the parties to the agreement, as the heirs argue.

We affirm the fee award to Redding. Redding also requests an award of its fees and costs for defending this appeal. Paragraph 13.4 expressly provides for such relief. Redding's request is granted.

IN LIMINE RULING

Wages contends the court erred as a matter of law by granting the heirs' motion in limine. Wages planned to introduce an expert witness at trial to offer

5

the opinion that the $1.25 million payment from Redding should be characterized as "income" or "profits," as opposed to a return of "capital." Wages expected the testimony to support his argument that he was entitled to receive a share of the money *before* the court considered the parties' relative capital account balances. The heirs argued the testimony was irrelevant.

The court tentatively granted the motion but left the matter open for further discussion during trial. "Now, whether or not it's helpful for the Court or the Court needs this expert testimony, it's a little bit early for me to say. . . . at this point I'm going to grant the motion." When given an opportunity to renew his objection to the tentative ruling during trial, however, Wages' counsel responded, "Actually, that won't be necessary. We'll rest our case now, too, Your Honor."

Having effectively withdrawn his challenge to the in limine ruling at trial, Wages has waived this challenge on appeal. In a comparable situation, where a court tentatively denies a party's motion in limine and the evidence that is the subject of the motion is later introduced at trial, the losing party is obligated to renew an objection to the evidence in order to preserve the error for review. Sturgeon v. Celotex Corp., 52 Wn. App. 609, 623, 762 P.2d 1156 (1988). By failing to renew objections at trial when the opportunity is offered, the objecting party fails "to give the trial court an opportunity to correct the error at the time when it could and should have been corrected." Sturgeon, 52 Wn. App. at 623.

We apply the same rationale here. By withdrawing his challenge to the in limine ruling at trial, Wages removed the matter from the court's consideration. If

6

the ruling was error, Wages gave the court no opportunity to correct it.

In any event, the ruling was not erroneous. The expert's proposed testimony was irrelevant to the judicial dissolution trial. In a dissolution, the court is required to distribute the corporation's assets according to a hierarchy specified in the company's operating agreement, or according to a statutory hierarchy if no operating agreement exists. See Noble v. A & R Envtl. Servs., LLC, 140 Wn. App. 29, 35, 164 P.3d 519 (2007), citing RCW 25.15.300. Here, the company's operating agreement required the court to distribute the company's remaining assets first to repay debts to creditors, and next to repay members in return of their capital contributions. Payment to members "in respect of their share of profits"—the step Wages wished the court would take first, before members' capital contributions were returned—was the very last step of the process under the operating agreement.

Wages' only claim before the court was for judicial dissolution under chapter 25.15 RCW. The opening statements reflected Wages' understanding that the purpose of the trial was to dissolve the company. The court was required to follow the dissolution scheme set forth in the company's operating agreement. The expert's testimony to distinguish "income" from "capital" was irrelevant to that task.

Wages argues the expert's testimony was nevertheless relevant because a subsection of the dissolution statute cross-references a statute permitting "interim distributions" of income to members "before the member's dissociation

7

from the limited liability company *and before the dissolution and winding up thereof.*" RCW 25.15.215 (emphasis added), cited in RCW 25.15.300(1)(b). The dissolution statute places these distributions in the second step of the distribution hierarchy—but it does so only "unless otherwise provided in a limited liability company agreement." RCW 25.15.300(1)(b). Here, the company's operating agreement did provide otherwise. It made payments to members in return of their capital contributions the second step of the distribution hierarchy, while relegating income distributions to members to the last step of the process.

Wages contends he became entitled to a distribution from the $1.25 million at the time the money was received in December 2010, and since he did not receive a distribution at that time, he became a creditor whose debt should have been repaid as the first step of dissolution under RCW 25.15.230. But by December 2010, when Redding made the payment at issue, the parties were well into their litigation of Wages' claim for dissolution. By then the members' entitlement to distributions under RCW 25.15.230 had passed.

The expert's testimony would also have been cumulative. Wages' counsel remarked at trial that his expert's testimony "may or may not be necessary," depending on how Cunningham, the company's accountant, testified. Wages cross-examined Cunningham at length. After Cunningham finished testifying, Wages withdrew his objection to the in limine ruling, signaling Wages' own belief that the expert's testimony was no longer necessary. The exclusion of evidence which is cumulative or has speculative probative value is not reversible error.

8

No. 68253-9-I/9

<u>Havens v. C&D Plastics, Inc.</u>, 124 Wn.2d 158, 169-70, 876 P.2d 435 (1994).

FINDINGS OF FACT

Wages assigns error to the court's findings of fact and conclusions of law in which the court determined the value of the heirs' initial contributions to the company and adopted Cunningham's calculations as to all parties' capital account balances. A trial court's factual determinations are not disturbed if they are supported by substantial evidence. <u>Davis v. Dep't of Labor & Indus.</u>, 94 Wn.2d 119, 123, 615 P.2d 1279 (1980). If substantial evidence supports the finding, it does not matter that other evidence may contradict it. <u>State v. Camarillo</u>, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

Substantial evidence supported the court's decision to rely on Cunningham's calculations of the parties' capital account balances. Cunningham gave detailed testimony and was subject to cross-examination and direct examination by the court. Cunningham's process, ledgers, correspondence with the parties concerning his calculations, and the tax returns he prepared were examined in court. The story he told was consistent with the parties' testimony. The court found his testimony credible and his calculations reliable. It is not our role as an appellate court to substitute our judgment for that of the trial court, or to weigh the evidence or the credibility of witnesses. <u>Davis</u>, 94 Wn.2d at 124.

The $4,048,000 valuation given by the court to the 13.3-acre Lake Stevens property was also supported by substantial evidence. The parties agreed to that value in the Redding Operating Agreement, which all parties—

9

including Wages—signed in 2005. Cunningham testified that he understood the tax value of the Lake Stevens property was around $3.4 million before the parties agreed to a higher "book value." Cunningham gave testimony that he reported the $4,048,000 value to the Internal Revenue Service on the heirs' K-1 corporate tax forms.

Although Wages testified that he and the heirs mutually agreed to delete the $4,048,000 value for the property when they executed the first amendment to the Operating Agreement, this was a matter sharply contested at trial and the court was not obliged to believe Wages' testimony.

We also reject Wages' argument that the court erred as a matter of contract interpretation by failing to adjust the $4,048,000 figure downward based on exhibit C to the Redding Operating Agreement. An appellate court's primary goal in interpreting a contract is to ascertain the parties' intent. Anderson Hay & Grain Co. v. United Dominion Indus., Inc., 119 Wn. App. 249, 254, 76 P.3d 1205 (2003), review denied, 151 Wn.2d 1016 (2004). Exhibit C provided that the value of a contribution should be reduced by $23,000 for each of the 176 planned units not actually built on the Lake Stevens property. Since no units were ever built on the property, this argument would place the value of the property at $0. That suggestion is frivolous. Moreover, exhibit C's adjustment calculation refers specifically to a contribution amount totaling $3,048,312, not $4,048,000. It is therefore not clear that the parties ever intended exhibit C to be used to adjust the Lake Stevens property's value.

10

Wages argues for the first time in his reply brief on appeal that the court's use of the $4,048,000 figure was error because Cunningham reflected uncertainty at trial as to whether this was a proper valuation of the Lake Stevens property. This argument is a nonstarter; the court did not rely on Cunningham's opinions to determine the property value. That value was set forth in the Redding Operating Agreement, signed by all parties in 2005.

Cunningham testified plainly that no matter how the numbers shifted to account for a few uncertainties, Wages' capital account balance would still be in the negative, while the heirs' unreturned initial contributions were in the millions. The court did not err by returning the $1.25 million to the heirs. Even after receiving that distribution, they still bore significant losses.

Affirmed. Redding Lake Stevens LLC's request for fees and costs on appeal is granted, subject to compliance with RAP 18.1.

Becker, J.

WE CONCUR:

Leach, C.J.

Grosse, J.